Judges Ewing and Marshall
composing the Court for the trial of this cause — the latter delivered the following Opinion.
In November, 1797, Henry Pawling bound himself, under the penalty of fifty pounds, to convey to William Dryden, “when thereunto reasonably requested,” a tract of land described by its metes and bounds. In August, 1817, Thomas Buford, as assignee of this obligation, brought an action of covenant upon it, against Samuel McKee, executor of Pawling, and the suit having been afterwards revived against George Robertson and Patsy McKee, the executors of Samuel McKee, a judgment was rendered, in March, 1834, against them, as executes of Pawling, for eight hundred dollars: at the foot *284 of which judgment is the following entry: “and it is agreed by the parties, that neither the executors of S. McKee deceased, nor the estate of said McKee, is in any event to be liable to the above judgment.” An execution upon this judgment was returned ‘no property found.’ Whereupon; Buford hied this bill against the executors of Pawling and the children and heirs of Polly McKee, his devisee, and Hugh McKee; their guardian, alleging that Pawling had conveyed the land to others; that his estate had been wasted by Samuel McKee, the first executor, and that assets of Ms estate had come to his executors, and praying a discovery of assets of Pawling’s estate; alleging, also, that Pawling had devised an extensive property, in land, slaves &c. to Polly Watkins, afterwards Polly McKee; of which a part had been alienated by her, in her lifetime, and the residue had descended, on her death, to her infant children, William and Jane McKee; that, on the petition of their guardian, Hugh McKee, the land so descended to them, had been sold under a decree of the Garrard Circuit Court, and that the proceeds of the sale were in the hands of their said guardian. The bill further alleges that Pawling died, leaving no heirs; and that his devisee and her husband, Darius McKee; died intestate, and that no administration had been granted on the estate of either; The record of the common law suit is made an exhibit; and the complainant prays that his demand, to the extent of the value of the land and interest, may be paid by the executors, or by the proceeds of the land in the hands of the infants and their guardian.
An agreement; at the foot of a judg’t against the executors of an ex’or, that neither they, nor the estate of the deceased ex’or, shall be liable for the judg’t,is a bar to any proceeding for a devastavit; but not to a bill for the discovery of assets. The ex’ors having demurred; & answered fully; and no assets appearing—a dismissal of the bill; as on demurrer, is not ground for a reversal. But— The a bill which seeks to subject, the real estate of a decedent, or its proceeds, to the payment of his debts — his executors, are proper parties.
*284 Demurrers on the part of the defendants, having been sustained by the Court, and the bill having been thereupon dismissed — a writ of error is prosecuted by the complainant: on which the only question necessarily to be decided, is, whether the bill shows any sufficient ground of relief in equity:
The agreement of record, which forms a part of the bill, and which exonerates the estate and the executors Of Samuel McKee from all liability to pay the judgment recovered by Buford, is a bar to any proceedings for devastavit by McKee; but it is no bar to a bill for a *285 discovery of assets, and we think that, so far as the bill has this for its object, it should not have been dismissed on the demurrer of the executors. But as .they have in fact answered, denying substantially any knowledge of assets, and as there is no ground to suppose that there are any personal assets of the estate of Pawling within the reach either of the executors or the complainant, whose allegations on this part of the subject, are exceedingly vague, and seem to have been made rather for the purpose of giving jurisdiction; than with any actual purpose or expectation of discovering such assets — the dismissal of the bill, as upon the demurrer of the executors, cannot be deemed prejudicial to the complainant, and is, therefore, no sufficient ground of reversal, unless the heirs of Pawling’s devisee are liable in equity on account of the land devised to their mother by Pawling, and which descended to and was sold by them. In which case, the executors would be proper, if not necessary, parties, and should have been retained before the Court, until the final disposition of the cause.
Under the laws of this state,heirs and devisees are responsible for the undertakings of their ancestor or testator to the extent of the estate acquired by descent or devise from him; and—tho’ there may be an adequate remedy at law—the estate being assets in the hands of the heir or devisee—constituting a trust fund for the payment of the decedent’s debts and liabilities-courts of chancery may take jurisdiction to enforce the liability, whenever any exists, either by the general principles of equity, or by force of the statutes; and the land is not discharged, from its liability for the undertakings of the devisor, by the death of the devisee and descent of the land to his heir, nor will the heir of the devisee be discharged by his alienation of the land; he will, in that case; be personally responsible in equity at least to the same extent that his ancestor the devisee, was responsible.
To assert and enforce this liability of the heirs of the devisee, was obviously the chief object of the bill. Whether there is any such liability, and if there be, whether it can be enforced in equity, and in this suit, are questions, not only interesting, but, so far as we know, new in this Court.
By the common law, there was no remedy against the devisee to recover even the specialty debt of the devisor; and none against the heir, if he aliened the estate descended to him, before suit brought. But by the statute against fraudulent devises, (3 W. & M. chap. 14,) which is substantially re-enacted in this state, (1 Stat. Law, 742,) an action of debt is allowed against the devisee and heir, and judgment may be obtained against them, respectively, for the value of the lands descended or devised, though such lands may have been alienated *286 before suit brought. Before the statute, the Court of Equity took jurisdiction to relieve against the alienation of the land by the heir; doubtless, because, by the common law, the land was real assets in his hands, subject to the payment of specialty debts; and the Chancellor, either oil the ground of fraud or trust, held him, and his alienee, liable for its value if he alienated it. This jurisdiction Was not lost by reason of the remedy at law given by the statute. Strode vs. Cox’s Heirs, 2 Bibb, 273; Couchman’s Heirs vs. O’Bannon, 1 Marsh. 386; Same vs. Slaughter, 1 Marsh. 388. On the contrary, the statute having created a new liability, enforcible at law against the devisee, the Court of Equity, looking upon the land as being thereby made assets in his hands, took or retailed jurisdiction to reach them there. Gawler vs. Wade, 1 Pr. Williams, 99-100. This jurisdiction seems to be accordant with the case of Ellis vs. Gosney’s Heirs, 1 J. J. Marsh. 349—where it is said that, “for claims against heirs and devisees, in that character, a suit in "chancery is an appropriate remedy, although there may also be a legal remedy;,”
The statute of fraudulent devises applies in terms to the specialty contracts alone of the ancestor or devisor. But as, in this country, land is made liable to the satisfaction of all judgments, and as, by various statutes, heirs and devisees are liable, jointly with the executor, and under certain cirbumstances, separately from him, to suit and judgment on all contracts of the decedent on Which the executor might be sued alone, the combined effect of all these legal remedies and liabilities, is, that heirs and devisees are responsible for the undertakings of their ancestor or testator, to the extent of the estate acquired by descent or devise from him, and that the estate so descended or devised is assets in their hands. It Would seem, therefore, that the principle effect of the statute of fraudulent devises being extended to all the contracts of a decedent, of whatsoever character or degree, viz: to make the property devised or descended liable for all such contracts, and to give remedy against the heir or devisee, in all cases of contract which could be enforced against the personal representative, and to *287 render them, to that extent, personally liable in all such cases — the Chancellor may well take jurisdiction, in all such cases, to subject the assets in the hands of the devisee, as he seems to have done, under the statute of fraudulent devises, in the case of Gawler vs. Wade, and as it is said he may do, in the case of Ellis vs. Gosney’s Heirs.
In the case of Ellis vs. Gosney's Heirs, (1 J. J. Marsh. 349,) which was upon a contract in which the heirs were not expressly bound, the jurisdiction of the Court of Chancery was maintained, not merely for the purpose of reaching the assets devised, but to the extent of ascertaining, and enforcing by personal decree, the liability of the devisees on account of the assets; which was said to be proper, as there was no personal representative. But under the statute of fraudulent devises, the devisees and heirs might have been sued at law, without the executor, if there had been one, and under the other statutes on the subject, they might have been sued at law, at the end of a year, if there had been no personal representative. That case may, therefore, be regarded as standing upon the principle that, although there be a legal remedy, (by statute,) a suit in chancery is an appropriate remedy for claims against heirs or devisees, in that character, where there was no, legal remedy by the; common law; which, in fact, furnished none against the devisee.
It being then, as we think, established by the principles and cases which haye been brought into view, that in consequence of the liability of the devisee to pay the debts of the devisor, to the extent of the land devised, the land devised is regarded in equity as a fund for the, payment of debts, and the devisee pray be made liable, in equity to the extent of that fund; it would be very strange, and contrary to the general analogies of the law, that, by the death o'f the devisee and the descent of the same land upon his heir, the land should, without consideration, be freed from its subjection to the debt, or that the heir who takes it as a mere volunteer, should not, in equity at least, incur the same liabilities, to the; extent of its value, which devolved upon his ancestor *288 as devisee. If, in consequence of the liability imposed by law upon the devisee, he is to be considered as bound by contract, or quasi contract, to pay the debt of the devisor, in consideration and to the extent of the devise, then as upon the death of the devisee, this contract may, by a proceeding at law, be enforced against the heir, to the value of the land, just as a specialty contract might be enforced at common law, we should think that the alienation of the land by the heir of the devisee, would give jurisdiction to the chancellor to enforce this debt of the devisee against his heir, on the same principle that the alienation by the heir of a specialty debtor, gives jurisdiction to enforce the specialty debt against the heir and alienee. And the fact that there is a legal remedy, would no more oust the jurisdiction if the one case than in the other.
Who are proper parties under the circumstances of this case.
But if there be no legal remedy against the heir of the devisee, to coerce the debt of the devisor — and it has never yet been decided by this Court, that there is such remedy — or if it be doubtful, then, on the ground that he has received by descent, the fund which the law has made subject to the debt, we think that he may, and should be, regarded in Chancery, as holding it in the same manner, and under the same burthen, as it was held by the devisee, from whom it descended to him. And that the Chancellor may either subject the land as a trust fund, or, if the heir has alienated it, may lay hold of the proceeds, or render him personally liable to the extent of its value.
We are of opinion, therefore, that the bill makes out a case for the jurisdiction of a Court of Equity against the heirs of Pawling’s devisee; and as Pawling is alleged to have died without heirs, and his devisee without a will, and having no personal representative, the suit being against the Executors of Pawling and the heirs of his devisee, and the guardian of the heirs,'who is alleged to have been the purchaser of the land, or to have its proceeds in his hands, we think all necessary parties are before the Court. If they had not been, this would not have justified the absolute dismission of the bill,
It has been decided (5 Mon. 598) that where a party has sued an ex’or at law, and failed to collect the debt, he cannot maintain a bill against the heirs afterwards, whom he might have joined in the same suit with the ex’or. But it is different where though the executor and heirs may both be liable, they are not liable jointly; as, in this case; where the bill is against the executors of the decedent and the heirs of his devisee: in such a case, the bill in eq. may be maintained.
If the heirs of a devisee could be sued at law (of which query,) still, if there was no personal representative, it would be proper to'sue them in chancery.
The fact that the heirs had aliened the land, would alone be sufficient to give the chancellor jurisdiction.
In such cases, the ex’or should be joined as a def’t, though he could not be joined at law.
The case of Bedell's Administrators &c. vs. Keethley, 5. Mon. 598, has been referred to, as decisive against the right of suing the executor and heirs in Chancery, after having made an ineffectual attempt to coerce the debt from the former, in an action at law against him alone. But there is little similarity between that case and this. Passing by the difference in the nature of the original contract sought to be enforced.in that case, which, according to the reasoning there used, might perhaps be deemed immaterial — this obvious difference between the two cases, is to be remarked, viz: That suit was against the heir and executor of the same person; and as they might have been joined at law, but for the choice or neglect of the plaintiff, it is there determined that the Chancellor ought not to help him against the party that was omitted in the action at law. And if the fact of having failed in the legal remedy, were the only ground of coming into Chancery against both, there could be little question as to the correctness of the conclusion, and none as to the analogy between that case and the case of Penny vs. Martin, 4. John. Ch. Rep. 566, on the authority of which it was decided. But here the heirs and executors sued are not the heirs and executors of the same party — the executors being the representatives of the original debtor or covenantor, Pawling, and the heirs being the representatives of Polly McKee, the devisee of Pawling. If the latter were at all liable to be sued at law, they might have been joined with the personal representative of their ancestor, the devisee, but could not have been joined with the executor or administrator of Pawling, as was decided in the case of Scott's Adm’r. vs. King's Heirs &c.—3. Dana, 470. Besides, even if they were suable at law, there being no personal representative of their ancestor, the devisee, jit was proper to sue in Chancery,’ as was said in the case of Ellis vs. Gosney. Another decisive circumstance which places this case upon ground entirely different from that on which the case of Bedell's Administrators &c. vs. Keethley stood, is the fact that, in this case, the heirs had alienated the land descended to them, which fact, as determined in the cases of Strode's Heirs vs. Cox, *290 Couchman’s Heirs vs. O’Bannon, and same vs. Slaughter, above cited, was itself sufficient to support the jurisdiction, in case of a proceeding against the heirs of the original obligor; and which, if the heirs of the devisee be at all liable at law, is deemed by us sufficient to support the jurisdiction against them, in this case, and the executors of the original obligor were, of coarse, proper parties in Chancery, though they could not have been joined at law.
The guardian defended the suit at law, & promised id pay the judg’t if one was obtained: this aids the chancellor’s jurisdiction, and counteracts the effect of time,upon the demand.
Heirs of a devisee being deem ed trustees in eq. of a fund applicable to the payment pf the devisor’s debts, the fact that a judg’t had been obtained against the executor of the devisor, for the debt, would not deprive the ch’r. of jurisdiction to enforce the liability of the heirs as trustees; but would rather tend to confirm the jurisdiction.
In this case, also, the bill states, that the guardian, of these heirs had,-as such, defended the action at law, and promised to abide by and to pay the amount of any judgment which should be obtained: a. circumstance which not only goes to support the jurisdiction of the Chancellor, but tends to remove the effect o.f the great lapse of time since the execution of the original covenant by Pawling, if that fact would otherwise b.e entitled to any weight upon the demurrer.
On the subject of jurisdiction, we would further remark, that if, as we suppose., the heirs, having received as volunteers, the land which was a trust fund for the payment of Pawling’s debts, in the. hands of their ancestor, may, on that ground, be regarded by.the Chancellor, as trustees, the jurisdiction of the Court could not be affected by the fact of a judgment at law having been obtained against the Executors of Pawling, which they had no means of satisfying out of the personal estate. This circumstance would rather confirm than defeat the right to go against the trust fund and the, trustee, in Chancery, whether he had alienated the fund, or not.
But in addition to all this, the case of Bedell’s Administrators &c. vs. Keethley, seems to be in opposition to the case of Couchman’s Heirs vs. Slaughter, above cited, and of Ewing’s Heirs vs. Handley’s Executor, 4. Littell, 355. And it is apparently inconsistent with the principle asserted in the case of Ellis vs. Gosney’s Heirs, supra, that Chancery is the, appropriate tribunal for the assertion of claims against heirs, and devisees, in that character, though there be a legal remedy. The case of Penny vs. Martin, &c., on the sole authority of which *291 that of Bedell &c. vs. Keethley was determined, decided only that the failure of the legal remedy by the negligence of the plaintiff, is no ground of relief, or jurisdiction, in Chancery, and in that case there was no other ground of jurisdiction. If there is any analogy between that case and the case of a plaintiff who, after failing to obtain satisfaction of a judgment against the executor alone, seeks it in Chancery against the executor and heirs jointly, it must be on the supposition that the Chancellor has no jurisdiction of the case against the heirs, except by reason of the failure of the legal remedy. And that, as they might have been joined in the action at law, but were not, this omission must be attributed to ignorance or neglect, and the consequent failure of the legal remedy furnishes no ground for the interposition of the Chancellor. But, if the jurisdiction against the heir be appropriate, and does not rest on the mere ground of a failure of the legal remedy, it is clear that neither the failure to sue the heir in an action at law, nor the fact of having tried and failed in the legal remedy against the executor, can oust the jurisdiction of the Court, as against the heir: And this seems to be well established by the cases above referred to. In the cases of Strode vs. Cox's Heirs, Couchman’s Heirs vs. O’Bannon, and Ellis vs. Gosney’s Heirs, the remedy, in the first instance, was asserted and sustained in Chanbery — in the two first cases against the heirs and personal representative jointly, and in the last against the heirs and devisees alone. In the case of Ewing’s Heirs &c. vs. Handley’s Executor, and in that of Couchman’s Heirs vs. Slaughter, there had been an ineffectual judgment at law against the executor. In the last of these cases, it is expressly decided, that the fact of the complainant having obtained a judgment against the personal representative, was no bar to relief in Chancery against the heirs; and in the other case, (Ewing’s Heirs &c. vs. Handley’s Executor) the same was impliedly decided. The case of Bedell’s Administrators, vs. Keethley, cannot, therefore, be considered as decisive of the present question.
(Costs. Decree dismissing a bill against executors, heirs of devisee &c. reversed; but, as it does not appear that the ex’ors can be made liable-no decree against them for the costs here.
Wherefore, without deciding any thing more than that the bill, upon its face, makes out a prima facie case, of liability on the part of the heirs, of which a Court of Equity has jurisdiction, and to which the heirs are bound to answer — the decree is reversed, and the cause remanded for further proceedings, in conformity with this opinion and with the principles and practice of a Court of Equity. But as it does not appear, as the case now stands, that the complainant is entitled to any relief against the executors, who are to be considered as mere formal parties, they should not be held liable for any portion of the costs of this Court, incurred by the plaintiff in error.