Spring Term
1839.

*Dougherty &c.*
vs
*Linthicum*

---

Ejectment.

# Dougherty *et al. vs.* Linthicum.

[Mr. Owsley and Mr. Hord for plaintiffs: Messrs. Payne and Waller and Mr. Beatty for defendants.]

FROM THE CIRCUIT COURT FOR MASON COUNTY.

*June* 12.

Judge MARSHALL delivered the Opinion of the Court.

Statement of the case.

IN December, 1830, an execution—for less than a hundred dollars—upon a judgment in favor of Linthicum, and against R. B. Smith, came to the hands of the sheriff of Mason county, and was afterwards levied on a tract of eighty acres of land, which had been conveyed by T. M. Ambler to Smith, in 1823, and on Smith's interest, subject to a mortgage, in an adjoining tract, containing five hundred and forty six acres, which had been conveyed by the same grantor to Smith, Cowgill and two others, in 1825, and mortgaged by them to Ambler, by deed bearing the same date. The land was valued at upwards of twenty one hundred dollars; and the whole having been sold by the sheriff, in gross, Linthicum became the purchaser, at the price of five dollars; and, on the 17th day of May, 1832, the sheriff

made a deed purporting to convey the same to him. Ambler appears to have been in possession of the land for some years before his conveyances above stated, and Smith seems to have been in possession afterwards, until the fall of 1830, when he left it, and Dougherty came into possession, as vendee of Smith, or of Cowgill, who was Smith's vendee.

On the 25th of May, 1832, this action of ejectment was commenced by Linthicum, as lessor of the plaintiff, against Dougherty and his tenants; and Smith, Cowgill and Dougherty were made defendants.

Upon two trials, general verdicts were found for the plaintiff, who excepted to the opinion of the Court setting aside the first verdict. The defendants, also excepted to the refusal of the Court to grant them a new trial after the last verdict, and to various opinions given in the progress of the trial; and they prosecute a writ of error for the reversal of the judgment.

The record contains the exceptions of both parties: from which it appears that, on both trials, the facts above stated were substantially proved; and also, that, on both trials, the defendants read the mortgage from Smith to Ambler, above referred to, and a mortgage from Smith, Cowgill &c. to Ambler, bearing even date with the deed of Ambler to them, and covering the same land, both of which mortgages were duly recorded; but the day of payment named in each of them, had passed several years before the emanation of the execution under which Linthicum purchased.

On the first trial, the defendants read title bonds from Smith to Cowgill, for the tract of eighty acres, and for his interest in the other tract, dated in May, 1830, and also, a deed purporting to convey the same land in pursuance of the bonds, and without reference to any mortgage or other incumbrance, but which bore date a few days after the execution under which the land was sold, had come to the sheriff's hands. These papers were not read on the last trial.

It is apparent from this statement of the facts, that this case presents several important questions respecting the sale of lands under execution, and the title ac-

Spring Term
1839.

*Dougherty &c.*
vs
*Linthicum.*

quired under such a sale in lands which have been mortgaged. To these questions the instructions given and refused principally relate. But before proceeding to the statement or consideration of them, we will notice one objection to the judgment, which being equally applicable to each of the verdicts, and in our opinion alike fatal to each, justified the setting aside of the first verdict, and required a second new trial to be granted; and is therefore, a sufficient ground, if there were no other, for reversing the judgment rendered on the second verdict.

Tho' an undivided part of the land for which an eject. is brought, may be recovered upon a sole demise of the whole by a joint tenant or tenant in common, and tho' it is not necessary that the verdict should designate the quantity or boundary of the land recovered upon a sole or several title—where the demise is by a single lessor, a general verdict cannot be sustained by evidence of title in him, to an undivided part only.

The declaration states a several demise from Linthicum, of two thousand acres; the evidence is, that as to one of the tracts sued for, and which is embraced in the recovery, Linthicum had title to one undivided fourth part only, and the verdict makes no discrimination, but finds the defendants guilty of the trespass and ejectment complained of, as in case of a sole or several title. Now, although it has been often decided, and is undoubtedly true, that an undivided part of the land sued for may be recovered upon the sole demise of the whole by a joint tenant or tenant in common, and although it has also been decided that, in case of a recovery upon a sole or several title, it is not necessary that the verdict should designate the quantity or boundary of the land, it has never, so far as we know, been decided, and it does not follow from any just comparison or combination of these two principles, that where the whole is claimed on the demise of a single lessor, evidence of title in him to an undivided part only, is sufficient to authorize or to sustain a general verdict in his favor. In such a case, as in the ordinary cases of sole or several title, the principle last stated would dispense with the necessity of designating in the verdict, either the quantity or boundary of the land to be recovered, but it does not affect the question as to the necessity of designating the quality and extent of the lessors interest in the title which he asserts. It is an anomaly in judicial proceedings, that it should not be deemed essential, in all cases, that a verdict and judgment which authorizes the absolute change of possession of land from the defendant to

the plaintiff, should contain some more precise identification of the land, than is to be found by comparing a general verdict with the vague terms usually employed in stating the demise in the declaration. But the principle on which this anomaly may be justified, or accounted for, in cases in which the plaintiff shows himself entitled to the exclusive possession of the land to some extent, has not been extended to a case in which the evidence shows, that the plaintiff has only an undivided interest, and, therefore, is not entitled to the exclusive possession to any extent. And as a general verdict and the judgment and execution which follow upon it, authorize and require the expulsion of the defendant, and the delivery of the conclusive possession to the plaintiff, we are of opinion that evidence of an undivided title in a sole lessor, does not authorize a general verdict in his favor in which the extent of his interest in the title is not designated.

This objection to the title applies only. to one portion of the land sued for. But, as the verdict obviously extends to that portion, and there was no remittitur as to that, the granting of a new trial was the only mode of correcting the error; and, as before stated, the failure to grant a new trial, after the second verdict, is a sufficient ground of reversal. *Miller* vs. *Hoy*, 2 *Bibb*, 568.

As, on this ground, if there were no other, the cause must be remanded for a new trial, we shall state, briefly and without argument or detail, our opinion upon such material questions as, upon a view of the facts brought out upon both of the trials heretofore had, seem likely again to arise in the case.

1. According to the repeated adjudications of this Court, the possession of Ambler and Smith, and the conveyance from the former to the latter, were *prima facie* sufficient evidence of such title in Smith, as was subject to levy and sale under execution, if he had not parted with it before the execution came to the sheriff's hands. *Million* vs. *Riley*, 4 *J. J. Marsh.* 395; *same* vs. *same*, 1 *Dana*, 359; *Addison* vs. *Crow &c.* 5 *Dana*, 291; *Campbell* vs. *Roberts*, 3 *Marsh.* 623.

Spring Term
1839.

*Dougherty &c.*
vs
*Linthicum.*

A mortgagor's interest is liable to a levy and sale under ex'on, and is so liable notwithstanding an *executory* contract for a sale of it—but not where there was an actual, *bona fide*, transfer before the ex'on came to the officer's hands.

The sale and conveyance of an equity of redemption, under ex'on, invests the purchaser with all the right, title & interest of the mortgagor; who cannot deny the purchaser's right of possession, or resist his recovery. The rights of the mortgagee's tenant or executory vendee; are the same—not greater.

A sale under execution, of land sold subject to a mortgage, passes only the equity of redemption, and, if the mortgage debt is paid, as there is then no eq. of redemption, nothing passes by the sale. Payment of the debt may, therefore, be proved, to defeat a recovery under the purchaser's title.

2. Notwithstanding the mortgages to Ambler, and although they may have remained unsatisfied, Smith's interest was subject to levy and sale by virtue of the act subjecting the estate of mortgagors to the satisfaction of executions. But in the case supposed, his interest was but an equity of redemption, and if, before the execution came to the officer's hands, he had, in good faith, made an absolute transfer or assignment of that interest, he had no longer any interest subject to levy and sale. But, as an executory contract for the future transfer of the interest would not actually pass it to the other party, it would, notwithstanding such contract, remain subject to levy and sale under an execution against Smith. What right such executory purchaser might have in equity we do not decide.

3. We are of opinion that, under the operation of the statute subjecting the interest &c. of the mortgagor to sale under execution, the purchaser claiming under a legal sale and conveyance by the sheriff, is invested with all the right, title, interest and estate of the mortgagor; that, in a contest between such a purchaser and the mortgagor in possession, the latter cannot, as mere mortgagor, deny the purchaser's right of possession, or resist his recovery; and that a tenant, or executory vendee, under the mortgagor, coming in before the lien of the execution attaches, has, in this action, the same and no other right against the execution purchaser, as against the mortgagor; or, if he come in after the lien, he has no other or greater right than the mortgagor himself has.

4. As to the tract which was levied on and sold subject to the mortgage, we are of opinion that nothing but the equity of redemption can be considered as having been sold; and that, if the mortgage had previously been paid off, so that there was no subsisting mortgage, and no equity of redemption, nothing passed by the sale and sheriff's deed. But if the mortgage was not paid off, and the sale was fair and legal, the purchaser acquired the entire estate and interest of the mortgagor, with the rights above indicated. Of course it would be competent to prove that the mortgage was paid off.

5. With regard to the other tract, which was levied on, and sold without any reference to or recognition of the mortgage, we think that, as the title and interest of the debtor was subject to the levy and sale, whether the mortgage was then subsisting or not; as the sale and conveyance of the land as the absolute property of the debtor, includes any interest less than the absolute right, and as the debtor could have no right to complain that the interest offered for sale was greater and more valuable than that which he actually held, the execution purchaser should be considered as having acquired all of the debtor's right, and of course his equity of redemption, if the mortgage debt was then unpaid. But that between the present parties each of whom, as appears by the evidence on the first trial, claims the absolute title under the mortgagor, if the question of payment be of any consequence, the presumption must be, in the absence of all testimony on the subject, that the mortgage debt upon this tract had been paid. This presumption is of course liable to be rebutted by proof.

6. An objection to the plaintiff's title, more serious than any which has been noticed, is founded upon the manner in which the sale was made. It is contended, and was moved by way of asking instructions, on both trials, that the sale was void in consequence of the *two tracts* having been offered for sale and sold *in gross.* And when it is considered that either of the tracts was obviously worth many times as much as the debt for which it was taken in execution; that in one of the tracts, Smith held the title in severalty, which was levied on and sold as his unincumbered property, while, in the other, he was entitled only to an undivided interest, which was levied on and sold as subject to a mortgage, it is entirely manifest that, the offering of the two tracts, or of his interest in them, jointly for the satisfaction of the execution, was necessarily calculated, if not intended, to prevent competition, and thus to produce a sacrifice, by, not only requiring those present to bid for two tracts instead of one, but also by compelling all who might be disposed to bid for a simple and certain interest in one of the tracts, to bid also, for an uncertain and

Spring Term 1839.

*Dougherty &c.*
vs
*Linthicum.*

A sale under execution, of land as the absolute property of the debtor, will pass all the interest that he has, subject to the ex'on —as an eq. of redemption where the land is mortgaged.

Where a sheriff levied on two adjoining tracts of land, and sold one as the absolute property of the ex'on debtor, and an undivided fourth, subject to a mortgage, of the other, but both at once, the sale thus of the two different interests together, without any necessity, was a gross abuse of discretion in the officer; and, tho' the sale was not *void*—if the cred itor was the purchaser, the irregularity was sufficient to quash the sale, on motion. And—

Spring Term
1839.
*Dougherty &c.*
vs
*Linthicum.*

complicated interest in another, which although it adjoined the first, was distinguishable from it, not so much by its position and boundaries as by the difference in the title and interest which the debtor had in the two parcels. This injurious course of proceeding having been, so far as appears, wholly without necessity or even excuse, must be regarded as a gross abuse of discretion and authority on the part of the officer, which, under the train of decisions by which this Court has upheld judicial sales, should not, we are inclined to think, be deemed sufficient to render this sale absolutely void, though it might perhaps furnish sufficient ground for quashing the sale by motion, in the Court to which the execution was returned, in a case where the plaintiff in the execution, who, being present, may be presumed to have controlled the sale, was himself the purchaser.

Such irregularities in the sale coupled with the fact that the creditor was the purchaser, at a very inadequate price, are facts proper to be submitted to a jury, as evidence of a fraudlent collusion in the sale, upon which they might find that nothing passed by the sheriff's deed.

7. When the circumstances now stated, are connected with the fact that the plaintiff in the execution purchased the land, at the merely nominal price of five dollars, we think it cannot be said that, this is a case in which there is no other circumstance from which, in connection with great inadequacy of price, a jury would be at liberty to infer that the sale was fraudulent; and we are therefore of opinion, that the instruction asked for by the defendant as to the effect of collusion between the sheriff and the purchasers, and of inadequacy of price in connection with other circumstances, as tending to prove such collusion, should not have been refused. It is, indeed, contented by the counsel of Linthicum (if we understand his argument) that the previous sale by Smith to Dougherty or Cowgill, was the cause of the smallness of the sum produced by the sale under execution. But if the jury would have been justified in attributing the effect exclusively to this cause, where there was another which may have co-operated with it, or may have been the sole cause, the Court had no such right, and could not, therefore, properly consider the instruction asked for as abstract.

Wherefore, the judgment is reversed, and the cause remanded for a new trial, on principles conformable with this opinion.