Buford *vs* McKee's Executor and the Heirs of Pawling's Devisee.

ERROR TO THE GARRARD CIRCUIT.

*Case 66.*                    *Equity.    Devisee.    Heir of devisee.*

*October 24.*    JUDGE MARSHALL delivered the opinion of the Court.

THIS case was formerly before the Court upon a de-
The case stated. murrer to the bill of Buford, and to the opinion then rendered, which is reported in 5 *Dana*, 283, under the style of "*Buford vs Pawling's executors, &c.*" reference is made for the principal facts affecting the claim set up by Buford, as they then appeared. The Court then decided that the bill made out a *prima facie* case of liabil-

ity on the part of the heirs of Polly McKee, who was devisee of Pawling, and that they were bound to answer. The complainant's bill having been again dismissed after full preparation, the question now is, whether, upon the pleadings and proof, the complainant has succeeded in establishing a demand enforcible in equity, against the said heirs.

One of the considerations mentioned in the former opinion, in support of the remedy in equity against the heir of the devisee, after the complainant had resorted to his legal remedy against the executor of the testator alone, was that he could not have united the heirs of the devisee in the action at law against the executor of the devisor. And as it now appears that the devisee was herself living, when the action at law was commenced, and for some years afterwards, the question is made whether this change in the facts of the case should not affect the decision upon the point of jurisdiction, or upon the merits of the bill. But the consideration just mentioned, was referred to in the former opinion rather as a ground of discrimination between this case and that of *Bedell's administrator* vs *Keathley*, (5 *Monroe*, 598,) than as in itself substantially affecting the question of jurisdiction; which was placed in that opinion upon the ground that the land of the debtor, whether in the hands of his devisee or of the heirs of the devisee, is made liable by our laws to the debts of the devisor. And the opinion is clearly expressed and attempted to be maintained on principle and authority, that the right to follow and subject this fund in equity, is not forfeited by the mere fact that an unsuccessful attempt has been made to coerce the debt out of the personal estate, by action at law against the executor alone. To this opinion we still adhere. And in addition to the reasoning by which it was maintained in the former opinion, may now be suggested the consideration that both at law and in equity, the personal estate is held to be the primary fund for the payment of debts.

The right of a creditor to subject a fund in equity, in the hands of a devisee or the heir of a devisee, is not forfeited by an unsuccessful effort to obtain satisfaction out of the personal estate at law.

But while we are of opinion that the remedy against the land, as the fund ultimately liable, should not be denied in equity, merely because it was not, as it might have been pursued in the first instance, by uniting the

But the equitable remedy may be lost, by a faithless and negligent persuit of the legal remedy,

until the person-
alty is wasted,
&c. without pro-
fit to the devisee
or heir.

devisee with the executor, it seems also reasonable to say that the remedy against the land, which in such a case can be upheld only on equitable principles, may be lost by such a faithless and negligent pursuit of the remedy against the personal estate as permits that fund to be wasted without any benefit to the land or its owner, afterwards attempted to be made responsible for the deficiency of the personalty. The case of *Bedell's administrator* vs *Keathley*, denies the equitable remedy against the land, because the legal remedy had been voluntarily sought against the executor alone, when the heir might have been united. We have decided in opposition to that case, that the equitable remedy is not forfeited by that fact alone.

And a creditor seeking satisfaction of the devisee or heir, after electing to pursue the personal representative alone, is bound to show that he has in good faith exhausted his remedies against the personal estate.

But we do not decide that the mere failure of the legal remedy, when sought against the executor, should, without regard to the causes or manner of that failure, be held sufficient to satisfy either the principle which requires the personal estate to be first resorted to, or the duty of good faith consequent on the election first to pursue that fund. On the contrary it seems to us, that if, as we have decided, the creditor, by electing to proceed first against the executor alone, should not be precluded from resorting to Chancery for subjecting the real assets in the hands of the heir or devisee ; he is at least bound to show that he has, in good faith, exhausted his remedies against the executor, before a Court of Equity will lend its aid against the heir or devisee.

The heir of a devisee not responsible in equity, when the personal estate which came to the hands of the executor, was sufficient, and was paid over to the husband of the devisee and wasted, and the estate of the executor was released by the creditor.

Under this view of the subject, the agreement of Buford mentioned in the former opinion, whereby he discharged the estate of Pawling's executor from all liability for the judgment recovered, might have been deemed, on the demurrer, a bar to equitable relief against the devisee or her heirs, if it had then appeared as it now does, that by this discharge of the estate of Pawling's executor, a remedy was abandoned which, if the claim set up in the bill be just, might have been pursued successfully, with the effect of relieving the real estate from responsibility, and that to grant the relief sought by the bill, against the heirs, would be to subject them to a heavy debt which should have been paid by the personal repre-

sentative, which might, if just, have been made out of the personal estate by the use of ordinary diligence in the remedy originally sought against the executor, and which might have been made out of the estate of the executor, if that estate had not been released by the creditor. It was intimated in the original bill, and might have been proved under its allegations, that personal property and slaves of the estate of Pawling, had passed from his executor to the devisee or her heirs, in which case the executor, had he been compelled to pay this debt out of his own estate, on the ground of a *devastavit*, in surrendering the property to the devisee or her heirs, might have sought remuneration from the real estate in their hands, and the creditor might, by right of substitution, have been entitled to the same remedy, notwithstanding his release of the executor, or by means of that release. And in this view, the alledged promise of the guardian of the heirs to satisfy the judgment, should one be recovered, might perhaps have been regarded as entitled to some weight in giving to the judgment against the executor, some effect against the heirs, to whom, or to their mother, the personal estate might have been distributed to the injury of this creditor.

But it now appears that no such promise was ever made, and that these heirs have never received any thing from the estate of Pawling, except the land which he devised to their mother; and although it appears that at the commencement of the action against the executor, in 1817, and for several years of its pendency, he had in his hands personalty and slaves of the deceased more than sufficient to pay this and all other debts of Pawling, and that so much thereof as was not required for the payment of other debts, was delivered to Darius McKee, the husband of the devisee, or disposed of by him, it does not appear that any part of the personal estate or slaves was ever delivered to the devisee herself, or disposed of by her; and as her land devised to her by Pawling, could not, if she had survived her husband, have been made liable in her own hands, to the executor, on account of the property which her husband had received in her right and wasted, nor in the hands of her heirs, who have received

BUFORD
*vs*
McKEE's Ex'R.
&c.

The heir of a devisee not responsible in equity for a debt of the devisor, when the personal estate was sufficient to pay the debt but suffered to pass into the hands of the husband of the devisee, and be by him wasted.

nothing from their father, it follows that the owners of the land, not having received or been accountable for any fund which could or ought to have been reached by a judgment against the executor, and that judgment having, in itself, no force whatever against the land, it furnishes to the complainant no aid, in his pursuit of the land. And as the action at law and judgment, *proprio vigore*, could have no force or effect against the heirs, in proving a just demand against the testator, Pawling, any aid which their guardian may have rendered in the defence of the action, not being authorized by the heirs, who indeed could not authorize it, nor required by any connection between them and the judgment, must be deemed, as to them, wholly gratuitous and officious, and no more obligatory than the act of a stranger—so that the complainant has made out no ground whatever, for reaching the heirs through the judgment against the executor, or for considering that judgment, in any degree, efficacious against them.

A creditor guilty of delay, unaccounted for, in prosecuting his legal remedy against an executor, whilst the personal estate passed into the hands of the husband of a devisee who wasted it, and releasing the executor of the debtor from personal responsibility, denied any remedy in equity against the heir of such devisee.

Nor does the remedy in equity derive any aid from the insufficiency of the personal estate, or from the failure of the remedy against it. For it now appears that there were assets which might have been reached by that remedy, but for the extraordinary delay wholly unaccounted for, which attended its prosecution, during which delay those assets were permitted to be diverted from the payment of this demand; and it also now appears, that the release of the executor was a release from a liability which, so far as appears, might have been made effectual for the satisfaction of the demand, without reaching, or being the means of reaching the real estate descended to the heirs.

The complainant's case then stands, not upon the right to follow the personal estate which may have come to the devisee or her heirs, and to render the land liable for it, nor yet upon the right of coming into equity to subject the land after the failure of a *bona fide* effort to subject the personalty in the hands of the executor, which we have admitted, that upon principles of pure equity he may do; but it stands solely upon the question, whether a creditor, who after having elected to persue the legal

remedy against the executor alone, when he might have united the heir, has so negligently prosecuted that remedy as to permit the personal estate to escape, and has finally, on obtaining judgment, and perhaps as the means of obtaining it, releases the executor's liability—for a *devastavit* can come into equity to enforce the original demand against the heir of the devisee of the covenantor, after a lapse of thirty-four years from the breach of the covenant. We are of opinion, as already intimated, that he has forfeited his equity against the land, by his faithless pursuit and suspicious abandonment of the remedy, which he first elected to take against the personalty and its represenative. And we will only now add, in relation to lapse of time, which is relied upon by the heirs in their answer, that so far is the presumption of satisfaction arising from that circumstance, from being repelled by the proceedings and judgment against the executor, that it derives additional force from the fact, that the action at law was permitted to slumber on the docket for thirteen years after its commencement, without any apparent effort to bring it to a trial during the life of the devisee, or her husband, or of the executor of Pawling, and that finally all defence was withdrawn, and when the judgment was obtained, the responsibility of the executor was released.

Under all the cosiderations, we think the Court did not err in dismissing the bill, and the decree is therefore, AFFIRMED.

*Turner* for plaintiffs: *Breck* for defeneants.