CRANE ET AL. v. GUTHRIE ET AL.

1. **Administrator**: ORDER TO SELL REAL ESTATE: CONSTRUCTION OF. Where upon the application of an administrator an order was granted to sell an equitable interest in real estate, and a sale was accordingly made, and it subsequently appeared that the title of the decedent to the land sold did not consist of an equity merely, but was absolute and unincumbered, it was *held* that nothing passed by the sale.

2. ———: CLAIM ESTABLISHED IN DISTRICT COURT. A claim against the estate of a decedent based upon a note and mortgage is sufficiently established by a judgment and decree in the District Court.

·3. ———: FILING OF CLAIM: NOTICE. The fact that no notice of the filing of a claim was served upon the administrator is not material when the administrator's authorized attorneys appeared at the hearing upon the merits of the claim.

4. ———: RENTS. An administrator is not entitled to the rents of the realty accruing after the death of his intestate.

5. ———: ATTORNEY: EMPLOYMENT OF. An attorney who has defended in an action against an estate in which other parties have an interest, being employed by such other interested parties, cannot recover compensation therefor from the administrator.

*Appeal from Dubuque Circuit Court.*

SATURDAY, DECEMBER 15.

THE plaintiffs are creditors of the estate of Lawrence Malony, deceased, the defendant, Guthrie's, intestate. In 1867 one Phipps, a creditor, obtained an order of court upon Guthrie as administrator, to sell real estate. Under the order

Guthrie made an application to sell the equitable interest of the estate in a large quantity of land. The application was granted and the sale made. A very small sum was realized. The property at the time was subject apparently to an incumbrance; it appeared of record to · be mortgaged. Afterward the incumbrance was held invalid. At the administrator's sale a part of the property, being so much as is in question in this suit, was purchased in the name of the defendant Edward McCeney.* Of the property so purchased by him he conveyed one-fourth to the defendant Geo. W. Burton, one-fourth to the defendant Mary A. McNulty, wife of the defendant H. T. McNulty. and one-half to the defendant Wm. Quigley. The plaintiffs bring this action to set aside the conveyance made to McCeney, and the conveyances made by him to his grantees, and for other relief. The facts are more fully set out in the opinion. The court set aside the conveyances, charged the defendant Maria A. Smith, widow of Lawrence Malony, $650 as rent of that portion of the property conveyed by McCeney to Quigley, decreed to the defendant H. T. McNulty an attorney's fee of $1,250, for services which will be hereafter described, and also decreed the sum of $240 to the defendant Burton, as reimbursement for money paid for the property purchased in the name of McCeney, but refused to charge Burton with the rent of the land conveyed to him. From the decree setting aside the conveyances and charging the defendant Mrs. Smith with rents, the defendants appeal. From the other parts of the decree, as above set forth, the plaintiffs appeal, perfecting their appeal first.

*George Crane*, for plaintiffs.

*Edward McCeney*, for defendants.

SEEVERS, J.—I. At the time of the administrator's sale the land in question appeared of record to be heavily incumbered by mortgage. A suit to foreclose the mortgage had been commenced. A defense had been interposed that the notes secured by the mortgage were without consideration, but no adjudication had been had. The

1. ADMINIS-TRATOR: order to sell real estate: construction of.

administrator's application was for an order to sell "the equit-able interest owned by said Malony." The order as made by the court appears in these words: " Petition to sell equitable interest in real estate. December Term, 1866. Notice filed. Order granted at public sale after giving legal notice." The land was in fact unincumbered, the notes for which the mortgage was given being without consideration, as was afterward held in the action to foreclose the mortgage.

The first question presented is as to whether the order, being merely to sell the equitable interest of the estate in the land, was sufficient under the circumstances to enable the adminis-trator to sell and convey the title. The interest of the estate in the land appeared of record to be simply an equity of re-demption. Under the order that is what was offered and what was sold. There was in fact no equity of redemption belong-ing to the estate, and we are of the opinion that nothing passed by the sale. A similar principle was decided in *Dougherty v. Linthicum*, 8 Dana, 194, and *Bullard v. Hinckley*, 6 Green-leaf, 289.

II. The court below decreed that the land be resold and the proceeds be applied in payment of the plaintiffs. Guthrie insists that to the plaintiff Crane nothing was due. A part of his claim was based upon a note executed by Lawrence Malony to one Batison and by him indorsed to Eugene Shine, Crane's intestate. Guthrie contends that this claim was never established in the proper court. The fact is, it was established simply in the District Court. Action was brought in that court against the heirs and administrator of Malony to foreclose the mortgage given to secure the note, and judgment was rendered for the amount due. This was an establishment of the claim against the ad-ministrator, and it was not, we think, necessary to establish it again. *Cooley v. Smith*, 17 Iowa, 99. We see no error there-fore in decreeing the payment of this part of Crane's claim out of the proceeds of the land in question.

The other part of Crane's claim is based upon a note execu-ted by Lawrence Malony to Eugene Shine, as trustee of one Bettie E. Whiting. To this claim it is objected that no ser-

vice of notice of the filing of the claim was made upon the administrator of Malony's estate. The evidence shows, however, that Griffith & Knight appeared as attorneys for the administrator at the hearing upon the claim, and that they were authorized so to do. This in our opinion was sufficient to give the court jurisdiction. It is further objected that Shine was not at the time of his decease the owner of the claim. The claim was established in Bettie E. Whiting's name, and still appears of record in her name. The evidence satisfies us, however, that at the time it was established it really belonged to Shine, and that he remained the owner of it until his decease.

III. The court below decreed the sum of $150 and interest thereon, amounting to $240, to be paid to the defendant Geo. W. Burton. In this it is claimed by the plaintiffs that the court erred. This money was decreed to be paid to Burton to reimburse him for money alleged to have been paid by him to the estate upon the administrator's sale to McCeney, which the court set aside as invalid. It is contended by the plaintiffs that no such payment was in fact made by Burton. As to whether such payment was made, the evidence is very unsatisfactory. The land was sold nominally to McCeney for $150. The administrator reports the receipt of that amount. It was not paid by McCeney, as is shown by his testimony. The evidence tends to show that the land was purchased in his name for Burton. If the land was in fact purchased for Burton, the purchase money should have been paid by him. Perhaps it was paid by him, but we find no evidence which we think would justify us in so holding. In this we think the court below erred.

IV. The plaintiffs claim that Burton should be charged with the rents of the land conveyed to him. This the court below refused to do, and in this there is no error. If the title did not pass to Burton, as we hold, it remained in the heirs, and if Burton is liable to any one for the rents he is liable to them. *Foteaux v. Lepage*, 6 Iowa, 123.

V. In 1865 O'Neil brought suit against the estate, and in

1871 Eugine Shine was substituted as plaintiff. The court below allows the defendant McNulty $1,250 as attorney's fees for defending such suit. This allowance is claimed to be erroneous.

**5. ——: attorney: employment of.**

Previous to the November Term, 1867, Griffith & Knight were the attorneys for the estate, and as late as November, 1872, a further answer was filed by Knight & McNulty, attorneys for the defendants therein. The cause was tried on the 7th day of December, 1872, and just previous thereto Griffith & Knight withdrew from the cause, and it will be assumed that thereafter Mr. McNulty had the sole management of the case.

The result of the trial in the District Court was the defeat of the plaintiff. The substance of the action was to secure the foreclosure of two mortgages. The one on the land in controversy being for an amount equal, or nearly so, to the value of the land. There was an appeal to this court, and so much of the judgment of the District Court as determined there could be no recovery, or foreclosure on the land in controversy, was affirmed.

It will be assumed, if the estate had any interest in the controversy, that the services of Mr. McNulty were valuable and he should be paid therefor by the estate, unless he undertook the litigation at the request of others with the intent of solely looking to them for his pay, or unless he is precluded from so recovering in other respects.

In 1866 an order was made empowering and directing the administrator to sell whatever interest the estate had in said lands. Such sale took place in January, 1867, and Edward McCeney purchased the same subject to said mortgages. Mr. McCeney, however, did so at the request of Burton. Whatever title McCeney got remained in him until after the trial of the Shine case in December, 1872, when at the request of Burton he conveyed one undivided half of the lands in controversy to Quigley, for the use and benefit of the widow of Malony, one-fourth to Burton, and one-fourth to Mrs. McNulty, wife of the defendant McNulty. The conveyance being made to Mrs. McNulty because Mr. McNulty so directed.

We are strongly impressed, from a careful examination of the evidence, that the sale of the interest of the estate in the lands, pending the suit to foreclose the mortgage, was a scheme gotten up by some one, not for the benefit or in the interest of the estate, but with the design and intent to divest the estate of all title or right to the lands, to the end if the mortgages could be defeated the widow of Malony and others would reap all the benefit and advantage that might accrue therefrom.

The evidence points strongly to Mr. Burton, as the person most active in bringing about this arrangement. The conclusion is strongly supported that it was believed all right or title of the estate in and to the lands was divested by the sale; that the title thereto subject to the mortgage was in McCeney to be disposed of by him as Burton should direct, and McCeney testifies he did so convey. The conveyance to McCeney was in January, 1867; in November following, Mr. McNulty for the first time appears in the action to foreclose the mortgages as attorney for the defendants. He testifies the lands were conveyed to his wife "as pay for my professional services as an attorney in the foreclosure cases." He was asked to state the agreement under which he obtained the conveyance. To this he replied, "I decline giving the agreement, my resollection is that I was employed by all the defendants in that case and represented them all in the trial of that case." To a question with whom was your agreement made, he replied, "I decline answering further than that I was employed by all the defendants *and was to receive this land* for my services." He also states "Burton told me if I would defend the suit successfully he would pay me either the land or its equivalent." If the mortgages were held valid Mr. McNulty was to get nothing, if invalid, one fourth of the land.

When this contract was made it was believed as we have said the estate had no interest in the land, having, as the parties to the contract believed, sold the same to McCeney who was to and did convey as Burton directed. Mr. McNulty must have understood that he was to look only to Burton for his pay, and Burton is the only person he is able to state that ever agreed he should be paid. We feel certain the administrator never agreed to pay

him. Nor did he have the power to thus bargain away the lands of the estate. Concede it to be true he was employed by all the defendants, yet if he agreed with one of them or with an outsider to accept a portion of the land as payment, he should not be permitted to recover of the estate on a *quantum meruit*, unless it has in some manner prevented the enforcement of the contract.

. We believe it to be true beyond question, from Mr. McNulty's own testimony, that the estate was regarded as a mere nominal party, his clients in fact being Burton, Quigley and others.

Whether Mr. Burton is living or dead we are not advised. The presumption is he is living, as his death is not shown nor any reason given why his testimony was not taken. This we regret and cannot help feeling this is strange and not according to the usual course. Our regret is increased because of the fact that McNulty refused to state what the agreement was or who it was made with. We are impressed that the court erred in allowing Mr. McNulty to recover.

VI. A part of the land in question was conveyed by McCeney to the defendant Quigley, brother of the defendant Maria A. Smith, formerly Maria A. Malony. The court below charged her with the rent of this land, to-wit, the sum of $650. It is claimed by the plaintiffs, and must have been so found by the court, that the conveyance was made to Quigley in trust for his sister, Mrs. Smith. Without questioning the correctness of this finding, we think the court erred in charging Mrs. Smith with rents. The title of the heirs not having been divested, if she is liable for rents she is liable to them. *Foteaux v. Lepage*, before cited. The costs in this court must be paid one-half by plaintiff and one-half by defendants.

MODIFIED AND AFFIRMED.

ADAMS, J., *dissenting*. I think that the evidence shows that McNulty was employed by all the defendants, including Guthrie, and that the Circuit Court did not err in allowing him, under the circumstances, payment for his services.