JORDAN v. MEAD.

1. Executions issued by justices of the peace, from one county to another, may be certified, either by the clerk of the county to which it is sent, or by any justice of that county, who is satisfied of the genuineness of the signature of the justice issuing it.

2. A purchaser of a slave at a constable's sale, who has notice of an unregistered mortgage on the slave, may nevertheless protect himself, if the plaintiff in the execution had no notice of the mortgage, until after his *lien* attached, by the levy of his execution.

3. A mistake made by the clerk, in the date of the probate of a deed, cannot prejudice the party, or prevent him from proving the true date of the probate.

Jordan v. Mead.

Error to the Chancery Court of Madison.

The bill was filed by the defendant in error, to foreclose two mortgages. The first of these, was executed as alledged, on the 17th December, 1839, to secure the complainant as surety in a debt due the bank at Huntsville, standing in the name of one David Daniel as principal, and Kennon Harris (the mortgagor) and the complainant as his sureties, for one thousand dollars, payable in three instalments, the first of which fell due in December, 1838, and was paid; the two remaining instalments being still due. This debt, it is alledged, was the proper debt of Harris, and Daniel and the complainant, sureties, and to secure him against liability, the mortgage was executed, conveying two slaves, Jim and Critty, which was acknowledged by him, on the day of its date, before a justice of the peace, and duly recorded.

That on the 1st March, 1840, Harris executed another deed of mortgage upon the same slaves, to secure a debt due the bank, of the same amount as the preceding, in which Harris was principal, and one Lewis and complainant sureties; acknowledged on the 21st August, 1840, before a justice of the peace, and on the 11th September, 1840, filed in office for record, and duly recorded. That on, or about the 15th August, 1840, the plaintiff in error became possessed of the negro woman Critty, by a pretended purchase, but with full knowledge of the mortgages above described. That Harris is wholly insolvent, and complainant will have the debt to pay, &c. The prayer of the bill is for an injunction, foreclosure, &c.

The mortgages are made exhibits to the bill, and correspond with the allegations, except that the certificate of the magistrate of the acknowledgment of Harris of the mortgage first described, is dated 17th December, 1838.

The defendant, by his answer, denies all knowledge of the execution of the mortgages, and denies that they were duly proved, and recorded; and alledges that the last mortgage was not made on the day of its date, but on the 1st of March preceding, and was antedated to defraud the creditors of Harris; but admits he was notified of them previous to his purchase.

He derives his title to the slave Critty, by a purchase at an execution sale, upon two judgments obtained by one Connally against Harris, before a justice of the peace in Madison county, upon which executions issued on the 29th July, 1840, and were sent to a constable. of Jackson county, by whom-they were levied on the slave Critty, and being returned and renewed, he sold the slave in virtue thereof to the plaintiff in error, on the 1st October, 1840.

That the bank having obtained judgment against Harris, and his sureties on the last instalment of both debts described in the mortgages, complainant acquired the control of both from the bank, and caused an execution issued on the judgment, rendered on the debt described in the last mortgage, to be sent to the county of Jackson, and levied on a tract of land belonging to Harris, which was sold for $405, and which he insists should have gone in discharge of the other judgment, obtained on the debt described in the first mortgage. He further charges, that by the direction of Mead, the sheriff sold the slave Jim described in the mortgages, under execution issued on the judgment last mentioned, for the sum of $140.

For the testimony taken, see the opinion of the court.

The chancellor, by his decree, declared the last mortgage fraudulent and void, but that the first was valid, and a *lien* on the slave Critty, and referred it to the master to state an account.

Upon the account being stated, the defendant excepted, because the master refused to charge the proceeds of the sale of the land, upon the debt secured by the first mortgage. But the court overruled the exception, and decreed a sale and foreclosure.

These matters are now assigned as error.

ROBINSON, for plaintiff in error.
CLAY & CLAY, contra.

ORMOND, J.—Before proceeding to consider the merits of the case, it is proper to examine an objection raised by the defendant in error, that the executions under which the defendant below deduced his title, conferred no authority upon

Jordan v. Mead.

the constable to sell, because they were not certified by a jus-
tice of the peace for Jackson county, having been issued by
a justice of the peace of Madison county.

The act of 1822 (Clay's Dig. 207, § 32) provides, that
where a defendant against 'whom a justice has rendered a
judgment, removes to another county, the justice may issue
an execution against his property in such county, "which
execution shall be certified by the clerk," and be executed,
and returned by any officer of that county.

In 1824, another act was passed on this subject, (Clay's
Dig. 207, § 35), that, "in all cases of executions running
from one county to another, it shall be the duty of any jus-
tice of the peace of the county to which such executions may
be directed, upon having the same presented for that purpose,
and upon being satisfied of the hand-writing of the justice of
the peace issuing such execution, to certify the same, which
shall be sufficient evidence of the authenticity thereof." We
cannot think it was the design of the legislature, by the pas-
sage of this last act, to repeal the former. It was evidently
intended to provide another mode for the accomplishment of
the same object, the authentication of the paper as a genuine
writ, and such being the case, it follows, that either mode
will be sufficient, and having been certified by the clerk of
Madison county, the constable was authorized to act upon
them as genuine writs.

The certificate of the justice of the peace, before whom the
acknowledgment of the execution of the mortgage was made,
is dated 17th December, 1838, whilst the mortgage itself
bears date the 17th December, 1839; and from the certificate
of the clerk of the county court, it appears it was delivered
for registration on the 23d March, 1840. The date of this
certificate, being prior to that of the deed, the execution of
which it purports to establish, is manifestly impossible, and
if not open to explanation, by proof of the true date, must be
inoperative. In the case of a deed, the date is a mere formal
part, being only *prima facie* evidence of the time of delivery,
and may be contradicted or explained. [2 Stewt. & Porter,
65.] The date of a certificate such as this, can certainly
have no greater sanctity than that of a deed. It could not
be tolerated, that the mistake of an officer in dating his cer-

tificate, should prejudice the rights of the parties. We are clear in the opinion, the mistake could be explained by parol proof, so as to show when the certificate was in fact made, which is fully established by the proof. It was not necessary to let in this proof, that there should have been an averment that there was a mistake in the date of the certificate. The allegation that it was acknowledged on a particular day, is sufficient, and it was not necessary to state the evidence by which the allegation was to be proved.

It is satisfactorily established by the testimony, that Jordan had notice of the mortgage of the complainant before he purchased the slave in controversy, and examined it on the record of the county court. But as it does not appear, that Connally the creditor had notice of the unregistered mortgage, before his *lien* attached, by a levy of his executions upon the slave by the constable, the purchaser at the constable's sale, may protect himself under the *lien* of the creditor. If this effect is not ascribed to the creditor's *lien*, it is illusory; whether a notice to the creditor, would have prevented the *lien* from attaching, if given previous to the levy of the executions, we need not now stop to inquire.

This point was expressly ruled in Daniel v. Sorrelles, 9 Ala. 447, as it respects real estate, and the principle is entirely applicable to personal property. In that case, the *lien* was held to attach, upon the rendition of the judgment, as that gives a *lien* upon the real estate of the defendant. The same effect must flow from the acquisition of a *lien* upon personal property, in virtue of the delivery of an execution to the sheriff from a court of record, or an actual levy of an execution from a justice's court by a constable. In both cases the *lien* is absolute against the defendant in execution, and must be good against one holding under him, by a title of which the creditor had neither actual, or constructive notice, before his *lien* attached.

This point is decisive of the whole case, as it shows that the complainant has no right to foreclose his mortgage, against the slave so purchased, and renders it wholly unnecessary to consider the other points made in the argument.

The result is, that the decree must be reversed, and a decree be here rendered dismissing the bill.