JAMES M. GILCHRIST, JUDGE, &c., vs. OSCAR FILYAU AND WIFE.

An action of debt cannot be sustained in this State against the heir upon the bond of the ancestor, although the heir be expressly named.

Error to Gadsden Circuit Court.

This was an action of debt against Filyau and his wife, the latter being heir at law of W. D. Harrison, who had become security on the guardian bond of R. L. Harrison, guardian of Edward Mashburn, a minor.   The plaintiff alleged as a breach of condition of the bond, that Robert L. Harrison, the guardian, had been removed from the office, and had failed to pay over and deliver to his successor the moneys and property received by him as guardian, &c. Defendants pleaded "non damnificatus," and plaintiff demurred. The Court overruled the demurrer and gave judgment for defendants.

To reverse this judgment, the plaintiff took a writ of error, and assigned for error in this Court—" that the Court below erred in overruling the demurrer of the plaintiff to the plea of the defendants."

*Thompson*, for Plaintiff in Error.

James M. Gilchrist, Judge, &c. *vs.* Oscar Filyau and Wife.

*Carmack,* for Defendant in Error.

HAWKINS, Justice :

The pleadings in this case raise the question, can an action of debt be sustained in this State by a creditor against the heir, upon the bond of his ancestor, the heir being expressly named.

If the solution of this question is to depend solely on the common law of England without reference to our statutes, the response would clearly be in the affirmative, for the principle is too well defined and settled to require comment or the sanction of authority. By that law the obligee of a bond could sue the heir, if expressly named, or the executor at his election, and have execution of the land descended to the heir, and this action being allowed against the heir no benefit could accrue to the obligee, unless he had execution of the lands descended to the heir. If the heir was not named in the bond he was not chargeable " for by the common law only the goods and chattels of the debtor, and the annual profits of the land itself, were liable to execution for debt or damages, because these being the security the creditor depended upon, they were liable in the hands of his representative or executor, as well as in the hands of the debtor himself, and hence it was, that the executor was bound to answer the debt of the testator so far as he had chattels or assets, though he was not named in the contract; but the land was not liable to execution, because it was preserved from the personal contracts and engagements of the tenant, that he might be the better able to answer the feudal duties to the lord, and therefore the land not being originally liable to the demand in the hands of the obligor, must be much less in the hands of the heir, who was not comprehended in the contract." 3 Bacon's Ab., 458–9, (F.)

In England if a man died seized in fee, the descent goes to his eldest son, and the lands are not assets in the hands of the administrator for the payment of debts. By the laws of Florida there is no such thing as primogeniture, the lands descends in parcenary, and is expressly declared assets in the hands of the administrator or executor, and after the exhaustion of the personal assets may be sold to pay debts due by the estate, besides being liable with personal property to an execution existing upon any judgment against such executor or administrator. Thompson's Digest, 202, 203.

Here we see all distinctions known to the English law between the real and personal estate, as to their being assets in the hands of

the executor or administrator entirely done away, subject to some modifications to be noticed hereafter. This distinction being once established, the same rights, duties, and liabilities, as to both would seem to be the necessary result and consequence. We will proceed further and point out some other of the alterations of the common law as created by our statutes. With us bond debts are of no higher dignity than simple contract debts. "All promissory notes and other instruments of writing, not under seal, being declared to have the same force and effect, as bonds and instruments under seal." Thomp. Digest, 331.

By the law of England the title to the personal property, of the intestate devolves upon the administrator, and he can sue for, and recover it against the heir, the law throwing the duty upon him of paying the debts, the personal property being assets for that purpose. The statutes of Florida give a more general and comprehensive power to the executor or administrator by extending and enlarging the fund with which the debts are to be paid. The statute of 1841, declares that, "it shall be lawful for any administrator of any deceased intestate or the executor of any deceased testator who has not power by the will of the testator, to sell real estate for the purpose of paying debts, or to make more equal distribution among the heirs, devisees, or legatees, to file a petition in the Circuit Court of the County in which letters of Administration or letters testamentary, have been granted, setting forth that the personal estate of his intestate or testator, (as the case may be,) is not sufficient for the payment of the debts of such intestate or testator, or that the real estate of such testator or intestate cannot be equally, fairly, and beneficially, divided among the heirs or devisees of such intestate or testator, without the sale of the real estate," &c. The statute then points out what proceedings shall be had upon this petition before a sale of the real estate is ordered or decreed by the Court.

The law of 1833 (Thompson's Dig. 202) declares that "real estate shall be considered assets in the hands of the executor or administrator, and after the personal assets are exhausted may be sold under an order or decree of the Judge of Probate or officer discharging the functions of Ordinay or Judge of Probate. It is provided in this statute that no sale of real estate shall be made to any greater extent, than shall be necessary to supply the deficiency of personal assets for the payment of the just and lawful debts of the deceased.

We cannot see as contended, that the act of 1833 is repealed by the act of 1841 further than changing the mode by which the executor or administrator is enabled to sell the real estate for the payment of debts where there is a deficiency of personal assets. On the contrary we think the law of 1841 is a virtual affirmance of that part of the law of 1833 which asserts that lands shall be assets, and we think that its provisions are even more extensive by enabling the administrator or executor to sell real estate to make *more equal distribution* among the heirs or devisees.

The object of the law of 1841 is clearly to guard more effectually the rights of the heirs by prescribing a process better calculated to produce that result than had existed by the law of 1833. The Judge of the Circuit Court is substituted in lieu of the Judge of Probate, and an issue is created for the purpose of better ascertaining the necessity of a sale of the real estate, and by making all persons interested in the lands parties to the issue their rights are necessarily more cautiously guarded. With these views we must consider the acts of 1833 and 1841 *in pari materia* and the former only so far repealed as conflicts with the latter upon the principle of *leges posterioris prioris abrogant.*

By our statute of descent it is declared whenever any person having title to real estate of inheritance, shall die intestate as to such estate, it shall descend in parcenary to the male and female kindred. Thomp. Dig. 188. The rule of the common law in relation to descents is thereby clearly abrogated and annulled, and we have already seen that it is in direct conflict with our statutes. Although by our statute of descents the fee is clearly in the heir so that the inheritance may remain unbroken yet it is so cast upon him subject to the debts of the intestate and I might add the dower of the widow. If the lands are assets they must carry with them the incidents of assets, and when the law declares them to be such the power to render them available necessarily follows as an incident.

The rents and profits of the lands constitute a fund for the payment of creditors, and as they must by our laws look to the executor or administrator for payment of their demands how could that fund be made available unless the estate from which it springs be rendered amenable for the debts? And the law points out the mode by which it is to be accomplished. The rents and profits are incident to the land, and it is obvious that the law intended that the whole estate should be subject to the payment of debts.

13

By the sixth section of the law of 1828, it is enacted that " all debts and demands of *whatsoever nature* against the estate of any testator or intestate, not exhibited within the said two years, (that is, from the time of granting the letters testamentary or letters of administration,) shall forever afterwards be barred." To this is appended a proviso, that the executor or administrator shall make advertisement for four weeks, giving " notice to all creditors, legatees, and persons entitled to distribution, that their claims and demands will be barred at the expiration of the period aforesaid, unless exhibited within the same—saving, however, to married women, infants, persons of unsound mind, imprisoned, or beyond the limits of the United States, in the military or naval service thereof during war, the said term of two years after their respective disabilities shall be removed, to exhibit their respective demands to *said executors* or administrators." Thomp. Dig., 206, sec.' 6.

This statute, like all statutes of limitation, must be regarded as one of repose and specifying a period after which litigation shall cease. Its terms embrace " *all debts and demands of whatsoever nature,*" specialty or otherwise, and we have already· seen that bonds and simple contracts are placed upon the same footing.

It is asked, how by any possibility can this statute have the operation intended, if a bond creditor were · permitted to come forward after the lapse of time embraced in the ' statute for the presentment of demands, and still render the · lands liable in the hands of the heir. If so, the intention of the law would be frustrated, and it would cease to be a statute of limitations.

It may be said that the saving clause in it, allowing two years for the exhibition of demands after . the removal of disabilities which might exist as to *feme coverts,* infants and others, would have the effect of prolonging the settlement of estates, and thereby defeat the object of the statute. Not so—because the law declares that no legacy or distribution shall be required of any executor or administrator until the expiration of six months from the taking out letters, &c., nor shall the executors or administrators be compelled to pay legacies or make destribution until bond and security be given by the person entitled to the same, *to* refund a due proportion of any debts or demands which may afterwards appear against the estate, and all costs which may be awarded on the same.

The Executor or Administrator if ͺhe has availed himself of

the security provided by law, in his behalf may have recourse to it for the payment of the debts or demands presented, or at least regard it as a means of reimbursing himself in case he pays the debt or demand. The bond and security may be regarded as a substitute for the fund parted with in the way of legacy or distribution, and are expressly provided for the *refunding a due proportion of any debt or demand which may afterwards appear against the estate*. If the land distributed could be followed in the hands of the heir, such a permission would be surperfluous, and we think it clear, that the demand must be made to the executor or administrator.

Pursuing the propositions of counsel, suppose the present action maintainable, the result would be that the specialty creditor would obtain an undue advantage over the simple contract creditor, he being obliged to bring his action against the executor, and we have seen that our law places them upon the same footing in every respect. Besides it would be equally injurious to the heir, for by the law of England if he pays off the bond debt creditors to the value of the land, he may plead such payment against subsequent suits and then retain the land, but by our laws it would still be subject to the simple contract creditor as assets in the hands of the executor.

If the common law remedy against the heir is restored by the act of 1841, and the lands are not assets in the hands of the administrator or executor, the remedy of the simple contract creditor is lost against the land, which would go to the heir discharged of the simple contract debts, and the order of the payment of debts as prescribed by our statute would be done away and abolished.— Thomp. Dig. 206, Sec. 2.

It cannot be said we think, that owing to the views we have taken the remedies of the bond creditors are affected, because he is compelled to sue the administrator or executor, for inasmuch as lands are assets by our law in their hands, so long as there are any, subject to the debts of the testator or intestate, the plea of *plene administravit* could not be pleaded, and if it was so pleaded, it could be rebutted by showing that there were lands of which the testator or intestate died seized, which might be the subject of sale. Lands may be deemed assets *sub modo*, or conditional assets as contended for, but still they come within the purview of the term assets, which is defined to be property in the hands of the administrator or executor, that is sufficient to make him chargeable to a creditor, legatee or

party in distribution so far as such property extends.   Williams on Excutors, **1011.**

It is clearly the duty of the executor or administrator, in case there should be a failure of personal assets, to make application for the sale of lands in the mode pointed out by law.   It is not a matter with him of mere discretion.   The power given is one to be exercised, and if not so exercised the plea of *plene administravit* cannot avail him, and upon a proper case made out before the Circuit Court it equally has no discretion to refuse the order or decree of sale.

We find a case in the first volume of Stewarts Alabama Reports strongly in point with the case at bar.   In that case there had been judgment rendered against the administrator, and it was decided that lands descended could not by *scire facias* against the heirs, be made liable to execution.   The Chief Justice who delivered the opinion of the Court remarks "In England, if a judgment had been recovered against the ancestor, the lands which were liable to execution in his lifetime may be made liable after his death by *scire facias* against the heirs and *terre tenants*.   Our Statute of 1812 gives to judgments and decrees a lien on lands, tenements, &c., and directs that the clerk shall frame the execution accordingly. But for debts, &c., for which judgment has not been obtained against the ancestor, the lands cannot be made liable to execution by judgment against the personal representative.   Our statutes have pointed out another mode for subjecting the lands to the payment of debts.   If the personal estate be insufficient the executor or administrator shall make his report accordingly, and the land shall be sold by order of the Court.   This course does not abridge the rights of creditors, for as the administrator cannot have fully administered if on a deficiency of personal estate he fails to make his report as required so that the lands may be resorted to, the remedy is more ample than at common law."   The statute here alluded to by the Court is one precisely like that of 1841 with the exception that in Florida the Judge of the Circuit Court is substituted for the Judge of Probate.   Indeed we believe our statute is copied from the Alabama statute, and here is a direct adjudication upon it, sustaining us in the views we have taken.

Deeming upon a due consideration of the subject, that the common law remedy in favor of the bond creditor against the heir is annulled by our statutes, we are of opinion that the judgment of the Court below should be affirmed.   *Per Curiam.*