WILLIAM H. GIBSON, APPELLANT, vs. WILLIAM MITCHELL, ET ALS., APPELLEES.

1. A suit by a co-surety against the heirs of a deceased co-surety for contribution is not barred by the statute of non-claim, the administrator having published the notice required by that statute and been discharged and the estate distributed before the cause of action accrued as between the sureties upon their bond.

2. The presentation of such claim to the discharged administrator is of no effect.

3. After the discharge of an administrator by due course of law and the distribution of the estate to the heirs, a suit in equity for contribution may be maintained against the heirs by a co-surety of the decedent, whose claim arose after the discharge, to the extent of the property or its value which came to the heirs.

4. Such suit is not a suit against heirs upon the bond of the ancestor to recover a personal judgment against them, but is in the nature of a suit *in rem* to reach the property of the ancestor. The decision in this case does not conflict with Gilchrist vs. Filyau, 2 Fla. R., 94.

Appeal from the Circuit Court for Gadsden county.

The appellant, William H. Gibson, filed his bill in equity against the appellees, William Mitchell and Sarah V., his

wife, Thomas Mitchell and Frances C., his wife, William A. Scott, a minor, and Thomas Mitchell as guardian for said minor, Sarah J. Hutchinson, *feme sole*, and Benjamin F. Watson. The bill alleges that on the ninth day of February, A. D. 1857, the said Gibson, together with one Thomas Scott, since deceased, became the securities of the said Benjamin F. Watson upon his bond as guardian of one James M. Gilchrist, a minor, and said Watson was thereupon appointed and duly qualified as such guardian by a court of competent jurisdiction, and took upon himself the guardianship of the person and property of said minor.

That on the          day of          , A. D. 1862, the said Thomas Scott, complainant's co-surety, father of the defendants Sarah V. and Frances C. Mitchell, and William A. Scott, minor, and then husband of Sarah J., now Sarah J. Hutchinson, departed this life intestate, leaving a considerable estate consisting of real and personal property; that said estate was administered upon by one P. A. McGriff, who, after having received a final discharge by the court appointing him as said administrator from the further administration of the same, turned over the residue of said estate to the legal heirs and distributees of the estate of the said Thomas Scott, deceased; that some time in the year 1872, and soon after the said James M. Gilchrist had arrived at the age of twenty-one years, complainant (appellant) was notified by the said James M. Gilchrist that upon a final settlement between him and his guardian, the said Watson, the latter was largely indebted to him, and totally unable to pay, and that unless complainant (appellant) arranged to pay, and did pay to him the amount found to be due him by the said Watson upon final settlement between them, that an action at law would at once be instituted against complainant as surviving security upon the guardian bond above referred to.

That upon ascertaining with certainty that the said Wat-

son would be indebted to his former ward upon final settle-
ment of accounts in the sum of twelve hundred dollars and
more, and the said James M. Gilchrist proposing to com-
plainant (appellant) to take eight hundred dollars as a com-
promise and full settlement of his demands against his
former guardian, the said Watson, complainant, after hav-
ing obtained legal advice upon the subject, and being ad-
vised that in the event of a suit at law against him upon
said bond a recovery for the whole amount would be ob-
tained against him, (the said Benjamin F. Watson being be-
ing wholly insolvent) proposed to the above named heirs at
law and distributees of the estate of the said Thomas Scott,
deceased, complainant's co-security, who were, and still are,
in the possession of the estate of said deceased, turned over
to them by the said P. A. McGriff as administrator as afore-
said, to make contribution or to join him in raising the sum
of eight hundred dollars to pay the said James M. Gilchrist
as a compromise and final settlement of his claim against
the said Watson as guardian aforesaid, for which sum the
estate of complainant, as well as the estate of the said
Thomas Scott, deceased, would be eventually liable; that
the said heirs and distributees of the said Thomas Scott, de-
ceased, declined, and still decline, to accede to this reason-
able and just proposition, or contribute any part or portion
of said demand.

That believing the proposition of the said Gilchrist mod-
erate and reasonable, complainant, to avoid expense and
litigation, on the        day of        , A. D. 1872, paid
said Gilchrist the sum of eight hundred dollars in full pay-
ment and satisfaction of his demand against the said Wat-
son on his said guardian's bond, and defendants refuse to
contribute the sum of four hundred dollars, with the legal
interest due thereon from the date of payment by complain-
ant to the said Gilchrist.

The bill then alleges that the said Thomas Scott died

seized of certain real estate therein particularly described, which is now in possession of defendants (except Watson) as heirs and distributees of the said Thomas Scott; and prays that said estate be decreed to contribute the amount found to be due complainant on account of the payment by him above mentioned.

The answer admits the execution of the bond as alleged in the bill, and that Thomas H. Scott died intestate at the time stated, leaving both real and personal property. It then alleges that afterwards, to wit: on the 1st day of January, A. D. 1863, letters of administration upon the estate of the said Thomas H. Scott, deceased, were in due form of law granted by the probate court, in and for Gadsden county, to one Patrick A. McGriff, and he did, in accordance with the requisition of the statute in such case made and provided, entitled "an act concerning wills, letters testamentary, letters of administration, and the duties of exectors, administrators," &c., by advertisement dated the day of , A. D. 1863, and published once a week for the space of four weeks in a newspaper printed in the county of Gadsden, and State of Florida, give notice to all creditors, legatees, and persons entitled to distribution of the estate of the said Thomas H. Scott, deceased, that their claims and demands would be barred at the expiration of two years from the publication of said advertisement, unless the same were exhibited to the administrator of the said Thomas H. Scott, deceased, within that time; and that the said bond was never presented or exhibited to the said Patrick A. McGriff as administrator as aforesaid by the complainant or any one else within two years from the publication of said advertisement as aforesaid; and that the said Patrick A. McGriff as administrator as aforesaid has fully paid and discharged all of the claims and demands against the said Thomas H. Scott which were presented to him within the time aforesaid, and has distributed the remainder

of said estate among these defendants, and afterwards, to wit: on the 10th day of October, A. D. 1870, was in due form of law discharged by the said probate court in and for Gadsden county from the further administration of said estate.

A general replication to the answer was filed by complainant, but was afterwards withdrawn by consent of counsel, and the case heard upon bill and answer.

After argument a decree was entered dismissing the bill. From this decree complainant appealed.

*H. F. Sharon* for Appellant.

If several persons are bound by a common charge, the liability being joint, and one pay more than his share, he is entitled to contribution from the rest. Adam's Equity, top page 495, and note.

The doctrine of contribution is not so much founded on contract as on the principle of equity and justice. Ib.; Campbell vs. Massier, 4 Johns. C. R., 334; S. C. Johns. C. R., 21.

The surety who has paid the whole is entitled to receive contribution from all the others for what he has done in relieving them from a common burden. Story's Eq. Jur., Sec. 492, and note; Spencer vs. Parry, 3 Adolph. & Ed., 331; Brown vs. Lee, 6 Barn. & Cress., 698; Kemp vs. Finden, 12 Mees. & Welsb., 421; Amer. Chan. Digest, vol. 1, pp. 373-4-5.

Where the ancestor binds himself and his heirs in an obligation, the obligee may sue his heirs, but the heirs are not bound further than the assets descended to them. Bacon's Abr., vol. 4, pp. 616, 617, 625, and notes; Amer. Chan. Digest, p. 295, §§39 and 45, p. 297, §55; Cogswell vs. Lyon, 3 J. J. Marshall, 39.; Leach vs. Gentry, 1 J. J. Marshall, 349; Buford vs. Pawlings' Exrs., 5 Dana, 289.

The heirs should be made parties. Story's Eq. Pleading, Secs. 163, 173, 180, and notes; Knight vs. Knight, 3 P. Will., 333; Gawler vs. Wade, 1 P. Will., 99.

The statute of "non-claim" does not apply in this case.

Where cause of action did not accrue until after the limitation expired, held not within the statute. Miller vs. Woodward, 8 Missouri, 176; May vs. Vann, 15 Fla., 553.

*R. B. Hilton*, on same side, cited the following cases and authorities:

May vs. Vann, 15 Fla., 553; Story Eq. Jur., §§492, 497; Dearing vs. Winchelsea, 1 White and T. L. E. Cases, 96, Am. Ed.; McKenna vs. George, 2 Rich. Eq., 15; Preston vs. Preston, 4 Grat., 89, 90; 10 N. H., 489; 11 ib., 431; 1 Parsons on Contracts, 35, 36, 5th Ed.; 1 Robinson Practice, 442; 2 ib., 439, 440, 441; 1 Greenleaf (Maine), 195; 4 Gray, 437; 15 Ill., 159; 1 Met., 389; 12 ib., 480.

Though the statute of limitations should be a bar to an action by the obligee against the *heirs* and representatives of the principal, yet that will not prevent a surety from maintaining an action against a co-surety for contribution. For the right to such action grows out of the original implied agreement arising out of their being co-sureties, &c., &c. 1 Rob. Prac., 492.

And says Prof. Parsons: "The contract on which the assumpsit is founded" (in action for contribution which may be maintained even at law) "dates from the time when the relation of co-surety and obligor is entered into, although the cause of action does not arise until the payment. Hence the discharge of one of the joint debtors by whatever cause, from his direct liability to the creditor, does not relieve him in law any more than in equity from his obligation to indemnify such of the remaining joint obligors as have borne

more than their original proportion of the debt. 1 Par. on Cont., 35, 36, 5th Ed.

*John W. Malone* for Appellees.

The record in this case raises the following questions:

1. Can the liability of Thomas H. Scott to William H. Gibson, for contribution, be enforced in a court of equity against the heirs of the said Thomas H. Scott to the extent of the property received by them as their distributive shares from the administrator of the said Thomas H. Scott at the suit of the said William H. Gibson?

2. Is the claim or demand of the said appellant, for contribution, barred by the statute of non-claim?

Under the statute law of Florida sureties are bound to each other for a proportionable contribution of the amount of the instrument upon which they are sureties, and if any of them be compelled to pay any part of said instrument, he shall have his remedy by suit against his co-surety. Thomp. Dig., 348–9.

Upon the payment by Wm. H. Gibson of the indebtedness of Benj. F. Watson to Jas. M. Gilchrist, the relation of creditor and debtor was created between Wm. H. Gibson and Thos. H. Scott, and this statute gave to Wm. H. Gibson an immediate right of action against Thos. H. Scott for contribution; and the right of action having accrued after the death of Thos. H. Scott, survived against his personal representatives.

A right of action, which does not die with the person, survives against the personal representative and not against the heirs of a deceased person. Williams on Executors, 1464, *et seq.;* Toller on Executors, 459, *et seq.*

Wm. H. Gibson would have encountered no legal obstacle in enforcing his right of action for contribution if Thos. H. Scott had been in life when it accrued; nor would he have

encountered any if the administrator of Thos. H. Scott had not been discharged when it accrued, for in the one case he could have enforced it against Thos. H. Scott himself, and in the other against the administrator.

If the administrator of Thos. H. Scott had never been discharged, Wm. H. Gibson would have his right of action against the administrator and not against the heirs of Thos. H. Scott, although the administrator may have distributed all of the property of the intestate among the said heirs. Nor would the said heirs be necessary or proper parties to any action which Wm. H. Gibson might bring against the administrator to enforce his right of contribution. Telfair's Extrs vs. Stead's Extrs, 2 Cranch, 407.

If Wm. H. Gibson cannot have the right of action for contribution against the said heirs during the continuance of the administrator in office, he certainly cannot have it against them after the discharge of the administrator from office. 13 Mass., 390; 14 N. H., 272.

In the State of Florida the heir is not liable upon the bond of the ancestor, although expressly named therein. 2 Fla., 94.

Immediately upon the payment of the indebtedness of Benj. F. Watson to Jas. M. Gilchrist, a claim or demand accrued in favor of Wm. H. Gibson against Thos. H. Scott for contribution, and the statutes of limitation and non-claim commenced to run upon said claim or demand. May vs. Vann, 15 Fla., 557.

If Thos. H. Scott had continued in life, he could have availed himself of the statute of limitations as a defence if Wm. H. Gibson had failed to enforce his claim or demand within the time limited by said statute; and in like manner, after the death of Thos. H. Scott, his personal representative could have availed himself of either the statute of limitations or statute of non-claim if Wm. H. Gibson had failed to enforce or present his claim or demand within the

time limited by these respective statutes.   And we contend that the heirs of Thos. H. Scott, after the full administration and distribution of his estate, and the discharge of his administrator, are entitled to the same benefit from these statutes as defences to this suit.-

The statute of non-claim commenced to run against Wm. H. Gibson's claim or demand for contribution on the —— day of ——, A. D. 1872, the day on which Wm. H. Gibson paid Benj. F. Watson's indebtedness to James M. Gilchrist, and in two years from that date worked a complete bar to said claim or demand, because Wm. H. Gibson failed to present the same within the said two years.   But it may be urged that there was no administrator to whom Wm. H. Gibson could present his claim during that time, and therefore the statute of non-claim could not run against it.   In answer to this we say that it should have been presented to the discharged administrator of Thos. H. Scott.

Suppose that during and after the administration and distribution of Thos. H. Scott's estate, and the discharge of his administrator, Wm. H. Gibson had been under some one of the disabilities enumerated in the saving clause of the statute of non-claim, against whom would he have his remedy after the removal of his disability?   Certainly against the discharged administrator of Thos. H. Scott, and the administrator would have his remedy against the heirs upon the refunding bond of the heir, which the law authorizes and contemplates that he will take from the heir before making distribution of the property of the estate, in order to protect himself against contingencies of this character.

If then the claims of persons laboring under the disabilities enumerated in the saving clause of the statute of non-claim must be exhibited to the discharged administrator within the time limited by said statute, after their disabilities are removed, to keep them from being barred, in like manner the claim of Wm. H. Gibson should have been ex-

hibited to the discharged administrator of Thos. H. Scott within two years after it accrued.

Again, if the discharge of the administrator makes the heirs liable for this claim, then we contend that it should have been presented to them within the time limited by the statute for its presentation to the administrator, for the statute of non-claim was intended for the protection of the heir in the peaceable enjoyment of the property derived from the ancestor, and should be construed liberally in his favor.

THE CHIEF-JUSTICE delivered the opinion of the court.

Two questions are presented in this case. First, whether the statute of non-claim may be interposed as a bar to the complainant's demand; and, second, whether a bill in equity may be maintained against the heirs of a deceased co-surety for contribution, to the extent of the property descended to them from the co-surety?

The defendants are the heirs at law of Thos. H. Scott. His estate was administered and property distributed to the heirs, and the administrator was discharged long before the payment by Gibson of the money demanded, and before the cause of action had accrued upon the surety bond executed by Gibson and Scott. The administrator had given due notice of the presentation of claims according to the statute.

First. It is claimed on the part of the appellees that the claim was barred because it was not presented to the administrator within two years from day of notice; and because it was not presented to the discharged administrator within two years after the cause of action accrued.

It was settled in this State by the case of May vs. Vann, 15 Fla., 553, that as between co-sureties the relation of debtor and creditor does not exist until payment by one of the sureties, and that the statute of non-claim does not affect the rights of a co-surety who has paid the joint debt after

the expiration of the two years mentioned in that statute. In addition to the authorities cited in that case, that of Sibley vs. McAlister, 8 N. H., 389, may be referred to, with its citations, as very strongly establishing the correctness of the rule.

We can see no force in the suggestion that the claim should be presented to the discharged administrator. Without some statutory provision making such a proceeding necessary or proper, there can be nothing effected by such action. The administrator having been discharged, he is *functus officio*, and no act of his can affect the rights of the parties. He is no longer the representative of the deceased.

Second. The demand of the complainant having accrued, by his payment of the money which had become due by virtue of the joint obligation, after the discharge of the administrator and the distribution of the property to the heirs, the complainant proceeds against the heirs to reach the property of the intestate in their hands.

It is said that this suit cannot be maintained because, as was decided by this court in Gilchrist vs. Filyau, 2 Fla., 94, an action cannot be maintained against the heir upon the bond of the ancestor. That, however, was an action of *debt* upon the bond, seeking to charge the heir personally upon the covenant, and to recover a judgment for money due by the breach of the condition, without reference to the property descended; and it was properly held that in this country the action could not be maintained. That is not this case. This is substantially a proceeding to reach the property of the co-surety, or its proceeds, as a fund primarily liable to the payment of his debts, and the judgment sought by the bill is that the estate in the possession of the heirs shall be made to contribute rateably the proper proportion of the amount paid on account of the joint liability.

In Cox's heirs vs. Strode, 2 Bibb, 273, it is held that at common law the heir who had aliened the land descended

34

before suit brought, might discharge himself by pleading nothing by descent at the sueing of the writ, but a court of equity held him responsible for the *value* of the land descended. (Citing 2 Atk., 204; 1 P. Williams, 777; 2 Saund., p. 7, n. 2.) And if there be no administrator the complainant may proceed against the heir.

In Ellis vs. Gosney's heirs, 1 J. J. Marshall, 346, there was no personal representative of Mrs. Gosney. Her heirs or devisees were held responsible for her undertakings and liabilities to the extent of the property acquired by descent or will from her. The heirs were not expressly bound by the covenants, and could only be sued *at law* with the personal representative. It was, therefore, proper to sue them in chancery. It was, therefore, ordered that the value of the property devised be ascertained, &c. The same principles are enforced in Couchman's heirs vs. O'Bannon, and same vs. Slaughter, 1 Marshall, 387, 388.

It was held in Buford vs. Pawling's Ex., 5 Dana, 283, that heirs and devisees are responsible for the undertakings of their ancestor or testator, to the extent of the estate acquired by descent or devise from him, because the land was assets in his hands subject to the payment of debts, and the chancellor held him liable if he aliened it.

We have examined all the authorities cited by counsel on both sides in this case and many others, and we find ample support for the doctrine referred to, and nothing essentially conflicting with it as affecting the case at bar. Co-sureties are expressly bound to contribute pro rata the amount paid by each to the relief of all. (Act of Feb. 14, 1835; Th. Dig. 348.) And real estate is declared by statute to be assets liable to be sold for the payment of debts. The lands of the co-surety, Scott, have not ceased to be liable for the payment of his liabilities, according to the case presented by the bill and answer.

The bill of the appellant should, therefore, be sustained,

and the decree of the Circuit Court dismissing the bill is reversed.