## M. J. DOYLE, APPELLANT, VS. MATILDA WADE ET AL., APPELLEES.

1. Under our statutes when administration has been granted to an administrator on the estate of a decedent, and said estate is unsettled and the administrator thereof not discharged, the heirs at law of such decedent cannot maintain a suit in ejectment for the recovery of real estate of said decedent. The administrator is the proper party plaintiff in such a case.

2. A judgment of the Circuit Court of the United States is a lien from the time of its rendition on the lands of the defendant therein, lying within the district over which the court has jurisdiction.

3. A State statute providing that a judgment rendered in one of the counties of a judicial district shall not be a lien on land situate in another county of said district, unless the same is recorded in the latter county, is not applicable to judgments of a United States Court.

4. When a ruling is made in a cause by this court *it becomes the law of the case* and cannot be reviewed by this court at a subsequent term thereof.

5. The effect of section 19 of the Statute of Limitations of February 27th, 1872, discussed and applied. Spencer vs. McBride, 14 Fla., 403, approved.

6. Section 21, McC.'s Dig., page 734, prescribing a time within which a new action or suit may be instituted, where a judgment in a former suit for plaintiff had been reversed on error, or when verdict had passed for plaintiff and judgment thereon had been arrested, has no application when the plaintiff in the former suit discontinued his action and the parties plaintiff in the two suits were not the same.

7. When the Statute of Limitations once begins to run no subsequent disabilities can suspend or impede it.

8. If a judgment creditor had no notice either actual or constructive of an unrecorded deed made by the judgment debtor to another before the rendition of such judgment, it is immaterial whether a purchaser at a sale under the judgment had notice of such unrecorded deed or not.

9. A purchaser with notice from a purchaser without notice takes a good title.

10. When defendant is in actual occupancy of a part of the premises in question, to extend the defence of adverse possession to other parts of the tract, he must show that he claims title to the land. under a written instrument as being a conveyance of the *whole tract* of which the portion occupied is a part.

11. The possession by defendant necessary to complete the defence of adverse possession must be continuous. What constitutes continuity of possession must necessarily depend largely upon the circumstances of each case as it may arise. The use to which property is adapted, the actual manner of its use, the circumstances and situation of the possessor and partly his intention, must be considered in determining it.

12. When both plaintiff and defendant claim title to the land in controversy from a common source, the defendant is estopped from setting up an outstanding title with which he is not connected.

Appeal from the Circuit Court for Orange county.

The facts in the case are stated in the opinion.

*Fleming & Daniel* and *J. W. Price* for Appellant.

*Andrew Johnson* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court:

This is a suit in ejectment by the heirs at law of James Weeks, for the recovery of a tract of land in the county of Orange.

The defendant pleads that letters of administration were granted to Stephen Weeks on the estate of said James Weeks before the commencement of this suit, and that said Stephen Weeks was, at the commencement of the suit, and was at the time of the filing of said plea, administrator of said estate, and that said estate remains unsettled. The plea was demurred to and raises the question as to the right of the heirs at law to bring an action for the recovery of real estate belonging to their ancestor at the time of

his death, while there is an administrator of said estate to whom letters have been duly issued and the administration of said estate is incomplete and unsettled. By the act of 1833 and of 1870 real estate of a decedent is made assets in the hands of an administrator or executor. Construing the act of 1833 this court, in the case of Gilchrist vs. Filyau, 2 Fla., 94, says: "Here we see all distinctions known to the English law between the real and personal estate as to being assets in the hands of the executor or administrator done away. This distinction being once established, the same rights, duties and liabilities, as to both, would seem to be the necessary result and consequence." In Sanchez vs. Hart, 17 Fla., 507, the court, after reciting the acts of 1833 and 1870 and the statutes authorizing the administrator to convey to the bargainer any real estate which his intestate had entered into a written agreement to sell, and of 1866 authorizing the administrator, with the sanction of the Probate Judge, to hire laborers and cultivate the land of the deceased, and referring to the case of Gilchrist vs. Filyau, *supra*, and also the case of the Union Bank vs. Powell's Heirs, 3 Fla., 175, says: "It is impossible to reconcile these decisions and statutes with the view that the heir is entitled to the possession of the real estate, as against the administrator, during the settlement of the estate." Further: "We think these statutes give to the administrator the right to take possession of the real estate of the deceased while the estate is in process of settlement, and the right of the heir is subordinate to his possession."

Ordinarily we would, after deciding that there were not proper parties to a suit, decline to pass upon any of the other questions raised in the record, but in this instance, as it is virtually the title of James Weeks which is in issue, and the question being only as to who shall represent such title, we feel justified in holding that this case is an exception

to the rule and will express our opinion on the questions which we think will arise in another trial.

Two judgments were recovered in the United States Court at St. Augustine against one Aaron Jernigan on the respective dates of April 2d and April 6th, 1860. The tract of land in dispute was levied on and sold by the Marshal on the first Monday in July of the same year, at which sale Askew & Brock became the purchasers. The defendant claims title by deed from said Askew & Brock. The land is situated in Orange county and the judgments aforesaid were not recorded in said county. The plaintiffs claim title as the heirs of James Weeks, deceased, who received a deed therefor from Jernigan on the 16th day of February, 1860, but which was not recorded until April 16th, 1860. Counsel for appellees insist that as the judgments were rendered in St. Johns county and were not recorded in the county of Orange where the land was situate the said judgments were not a lien on said lands, under our statute of February 12th, 1834, McClellan's Digest, page 619, sec. 2. The judgments were rendered in the United States Court and the county of Orange was a part of the district over which said court had jurisdiction. We are of the opinion that the judgments of the courts of the United States became a lien on any lands of the defendant lying anywhere within the district over which the court has jurisdiction, and that State statutes requiring judgments to be recorded in the county in which the land lies have no effect upon a lien of a judgment of the United States Courts. This has been expressly decided in 1 Abb., U. S., 474.

It is claimed by the counsel for the defendant below that he took possession of the land in controversy in the year 1860, and in the lifetime of James Weeks. That Weeks died in the year 1865. This suit was instituted " in the

month of September, 1878," as the record shows. The court below charged the jury " that in calculating the period of adverse holding by the defendant you shall exclude the time which elapsed from the 13th of December, 1861, up to the 27th of February, 1872."

This court in the case of McBride vs. Spencer, 14 Fla., 403, and in this same case when here at the January term of 1880, has construed the statute of limitations, together with sec. 19 of the act of 1872, in language which it would seem almost impossible to misunderstand, and that construction is the *law of this case.* If the claim of defendant below (we express no opinion on the evidence, as the case must be tried again,) that he took adverse possession of the land in 1860 is true, then by the operation of sec. 19 of the act of 1872 the representatives of Weeks could bring the action within six months from the 27th of February, 1872, and if they failed to bring it within said time it was barred by said act.

The record shows that a suit was commenced by Stephen Weeks, as administrator of James Weeks, deceased, against the defendant for the land in controversy on the 27th day of April, 1874, which suit was discontinued on the 29th of May, 1878. The present suit was instituted by the heirs of Weeks in September following. The court further charged the jury that in calculating the period of adverse holding by the defendant they should consider the commencement of this suit as dating from the 27th day of April, 1874. This charge was erroneous. Counsel for appellees cite in support of it the following act, McClellan's Dig., p. 734, sec. 21 : " If in any action or suit judgment be given for the plaintiff, and the same be afterwards reversed by error, or a verdict pass for the plaintiff, and upon matter alleged in arrest of judgment the judgment be given against the plaintiff, that he take nothing by his

plaint, writ or bill, in all such cases the party plaintiff, his heirs, executors or administrators (as the case shall require) may commence a new action or suit from time to time within one year next after such judgment reversed or such judgment given against the. plaintiff, and not after." It has no application to the case here presented. The parties plaintiff in the two suits are not the same There was no judgment for the plaintiff which was afterwards reversed on error, nor a verdict for plaintiff, and upon matter alleged in arrest of judgment, judgment given against the plaintiff. So far as we are advised it was a voluntary discontinuance of his suit by Stephen Weeks.

The court also charged the jury that if they found from the evidence that any of the plaintiffs were married women or under the age of 28 years, April 27th, 1874, the date of the commencement of the suit against such plaintiffs, there can be no adverse possession no matter how long the property may have been held against them if you do not believe that this statute began to run against Weeks in his lifetime. Fixing the age at 28 years we suppose was intended to allow 7 years after coming of age. This charge was also erroneous, for the reasons given above, to-wit: fixing the time when the statute began to run from the 27th of April, 1874. If it be true as defendant below claims that he took adverse possession of the land in 1860, in the lifetime of the ancestor of plaintiffs, and through whom they claim, the statute begun to run from that date against their ancestor and no subsequent disabilities of the plaintiffs, nonage or coverture, could check or impede it. This question also was decided by the court *in this case* at the January term, 1880, and is also the *law of this case.*

The court also instructed the jury that if Askew or Brock, or either, had actual or constructive notice that Jernigan had sold the property to James Weeks prior to the

Marshal's sale, then it was the duty of the purchaser to inquire what interest Jernigan had in the property. This charge was erroneous. It was of no consequence whether the purchaser at the Marshal's sale had actual notice of the deed from Jernigan to Weeks, unless it was shown that the plaintiff in the judgment had at the time of the rendition thereof notice of such deed.

If the plaintiff in the judgment when it was rendered had notice of the deed from Jernigan to Weeks, then no lien by virtue of such judgment attached to the land.

The rule is established in this State that a judgment is a lien on real estate which has been conveyed by deed by the defendant in execution prior to the rendition of the judgment, but which was not recorded and of which the judgment creditor did not have actual notice at the time of entering such judgment. If the judgment creditor had no notice of the deed, either actual or constructive, his lien was complete and a purchaser at a sale thereunder would take such title as the records showed to be in the defendant in the judgment without regard to whether the purchaser had notice of it or not. If the creditor had fixed a lien on the real estate its validity could not be impaired by depriving any person of the right to purchase at a sale under it. A purchaser with notice from a purchaser without notice takes a good title. See Carr vs. Thomas, 18 Fla., 736; Eldridge, Dunham & Co. vs. Post, 20 Fla., 597; see also Devendell vs. Hamilton, 27 Ala., 155; Jordan vs. Mead, 12 Ala., 247; Daniels vs. Sorrels, 9 Ala., 436.

Defendant asked the court to instruct the jury that the "plaintiff must prove the location of the premises and that the land of which their ancestor was seised are the identical lands described in the declaration." This was a correct statement of the law and should have been given.

Defendant also asked the court to instruct the jury "if

you find from the evidence that the defendant has been in actual occupancy of a part of the premises adversely, and under color or claim of title, and that he and those holding and claiming under him have, during the period of such occupancy, usually improved or cultivated other portions of the land, building houses and barns, and planting fruit and ornamental trees thereon, the court charges you that this, under the statute, is sufficient to establish adverse possession of the whole tract." There was no error in refusing this instruction. The statute specifies upon what such claim of title shall be founded, to-wit: "Upon a written instrument as being a conveyance of the premises in question." This not only defines the kind of "claim to title" which is protected by the statute, but also contemplates that such instrument should be a conveyance of all the premises in question. The instruction is based upon the predicate that the defendant "has been in possession *of a part of the premises* and under color or claim of title." We can only infer from this that the claim of title was to the part of the premises actually occupied. The defendant must show that his claim of title was founded on an instrument in writing to the whole of the premises in question, and a charge which curtails it would be erroneous.

The Judge charged the jury that there must be no moment of time when such possession is broken up or discontinued. It would be difficult, if not impossible, to prescribe in advance what lapse of possession by the occupant would destroy its continuity. A voluntary and intentional abandonment of the premises without intention of returning or retaking possession, no matter for how short a time, would be such a breach of continuity of possession as would render inoperative the defense of adverse possession. As to what is a continued occupancy and possession, must in a

great degree rest upon and be determined by the special circumstances of each case, in the determining of which the condition of the property, the uses to which it is adapted or employed, the circumstances and situation of the possession, and his intentions in regard to it should all be considered. Webb vs. Richardson, 42 Vermont, 465.

In the course of the trial the defendant offered evidence to show that the title to the property in suit was in a third party, to wit: Wm. Travers. The plaintiff objected on the ground that the defendant and plaintiff deraigned their title from a common source, to wit: from one Aaron Jernigan. We think this objection a good one. If it be true, and as we have said we express no opinion on the evidence, that plaintiffs claim title through a deed to their common ancestor, James Weeks, from Aaron Jernigan, and the defendant claims title through a purchaser at a sale of the property under a judgment against said Jernigan, they claim title from a common source. Without passing upon the question as to the right of a defendant in an ejectment suit to set up an outstanding title with which he does not connect himself, we think it clear that where both parties claim title to land from a common source that the defendant is estopped from setting up an outstanding title with which he is disconnected. 3 Wait's Actions and Defences, pp. 17 and 18; Union Bank vs. Manard, 51 Mo., 548. When both parties claim under a common source of title they mutually admit the title in the person from whom they claim to be good and neither of them need go further back than such title. 52 Penn., 492; Gantt vs. Cowan, 27 Ala., 582; Pollard vs. Cocke, 19 Ala., 188.

We do not think it necessary to express an opinion on the question as to the admissibility of a certified copy of

a deed in evidence. The Constitution lately adopted contains a provision on this subject which will govern this question at another trial.

The judgment is reversed and the cause remanded.