M. A. SMITH, Liquidator of Cocoa Bank & Trust Co., v.
BARNETT NATIONAL BANK OF JACKSONVILLE.

156 So. 478.
Division B.
Opinion Filed September 10, 1934.

*John D. Shepard,* for Plaintiff in Error;
*James J. Jackson,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review a judgment in favor of the defendant in the suit instituted by the statutory Liquidator appointed by the Comptroller upon taking charge of the affairs of a defunct bank. The suit was to enforce the payment by an executor stockholder of its liability on a stock assessment.

The controlling questions to be determined are: First,

Whether or not the Comptroller did on the 22nd day of January, 1929, make a valid assessment of 100% on each share of stock against each and every of the stockholders of the defunct bank, which bank had been taken over by the Comptroller under the statutes in such cases made and provided on the 2nd day of November, 1928, and, if so, whether or not the claim against the defendant upon such assessment was barred by the statute of limitations, Sub-Section 5 of Section 2939 R. G. S., 4663 C. G. L., when the suit was filed more than three years after the date of such assessment by the Comptroller. Second, Whether or not when the statute of limitations has commenced to run it runs over all subsequent disabilities.

If these two questions are determined adversely to the plaintiff in error, then the remaining questions attempted to be presented are not necessary to be determined in disposing of this case.

In Tunnicliff as Receiver v. Noyes, 101 Fla. 794, 135 Sou. 505, we held:

"An order of the Comptroller, acting within his authority, directing an assessment, is conclusive upon stockholders of the bank and cannot be controverted by them in any defense to an action based upon such assessment.

"It is for the Comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion and his determination is conclusive. The stockholders cannot controvert it.

"The question as to whether or not an assessment shall be made against stockholders and the authority to determine the amount of the assessment to be made against stockholders involves the exercise of judgment and discretion and

is an attribute of sovereignty which may only be exercised by the State acting through an officer. Such acts of sovereignty may not be exercised by an employee, although such employee may be authorized by statute to enforce the results of the exercise of such sovereignty by an officer when such officer has been authorized to exercise such sovereign power and authority."

In this case the assessment made by the Comptroller on January 22, 1929, was as follows:

"Jan. 22, 1929.

"Mr. Peter Tomasello, Jr., Receiver,

"Cocoa Bank & Trust Co.,

"Cocoa, Fla.

"Dear Mr. Tomasello:

"It is evident that an assessment on the shareholders of the Cocoa Bank and Trust Company will be necessary and you are hereby directed to levy and call for such assessment amounting to 100% on the amount of shares held, and such assessment is hereby levied.

"I am sending you under separate cover a number of blanks on which for you to levy and call in such assessment.

"Yours very truly,

"ERNEST AMOS,
"*Comptroller.*"

This letter shows that the assessment of 100% was determined and made by the Comptroller and complies with the requirement of the law in this regard as stated in the case of Tunnicliff as Receiver v. Noyes, *supra*. The Supreme Court of the United States, in construing the like Federal statute in the case of Orson Adams substituted for George E. Bowden as Receiver, etc., v. Johnson, *et al.*, 17 Otto 251, 27 L. Ed. 386, 107 U. S. 252, said:

"Objection is taken here by the appellees to the sufficiency of the proof that the Comptroller of the Currency decided before this suit was brought, that it was necessary to enforce the personal liability of the stockholders. The plaintiff, as a witness, testified that he received written instructions from the Comptroller of the Currency to enforce the whole of the personal liability of the stockholders. The defendant, Johnson, objected, that the written evidence referred to must be produced. The record states that the plaintiff reserved the right to file the paper, or a duly certified copy of it, with the deposition, before the same should be closed. Before the deposition was closed, the witness was recalled and produced, as the record states, the original letter, addressed to him and signed by the Comptroller, and it was filed with the deposition. No objection was made to it, and no requirement of further proof was made. It directs the receiver to institute legal proceedings to enforce against every stockholder of the bank owning stock at the time the bank suspended, his or her personal liability, as such stockholder, under the statute. This was sufficient.

"The liability of the defendant bears interest from the date of said letter. August 13, 1875." Casey V. Galli, 94 U. S. 677 (XXIV, 169.)

We, therefore, hold that the statute of limitations began to run from the date of the assessment by the Comptroller.

That the Comptroller, at a later date, decided to make a more formal assessment could have no controlling bearing on the rights of the defendant to plead the statute of limitations which was caused to begin to run by the order of the Comptroller of January 22, 1929. In other words, when the Comptroller had made the assessment of the full 100% authorized by statute, as is shown by the record, and the statute of limitations had begun to run, he could not thereafter by making a like assessment in a more formal manner

stop the running of the statute of limitations against the claim as fixed by the former assessment and establish a new date for the beginning of the running of the statute of limitations from the date of such second order of assessment. This must be true because when the Comptroller determined from information in his hands that it was necessary to make 100% assessment on the shares of stock held by each shareholder of the Cocoa Bank & Trust Company and thereupon declared the assessment made in accordance with his findings of such necessity the statutory liability of shareholders thereupon immediately ripened into a cause of action and became a claim in the hands of the receiver upon which he was authorized to make demand for payment and, upon payment being refused, was authorized and legally empowered to maintain a suit at law to enforce the collection of same. In other words, what was under the statute up to that moment a potential liability became thereupon an actual existing enforceable liability. It necessarily follows that from that moment the statute of limitations began to run. Certainly the Comptroller, and by Comptroller we do not mean the individual who happens to occupy the office, but we mean the State functionary, cannot later say, "I did not make the assessment as formally and as clearly as I might have and, therefore, although we have collected many of the sums so assessed, I will now make a more formal declaration of the assessment; I will disregard the former assessment made by the Comptroller; I will deprive shareholders of that part of the period of limitation which has run against these assessments and by making a new assessment will now fix a new beginning for the running of the statute of limitations."

Sub-Section 5 of Section 2939 R. G. S., 4663 C. G. L., is the controlling statute of limitation in regard to causes of action of this character as this is an action upon a liability

created by statute other than a penalty or forfeiture. See McDonald v. Thompson, 184 U. S. 71, 46 L. Ed. 437.

Demurrer was sustained to plaintiff's replications Nos. 5, 6 and 7. These replications sought to plead a suspension of the running of the statute of limitations because it is alleged that on January 22, 1929, P. Tomasello, Jr., was receiver of Cocoa Bank & Trust Company and at that time Brevard County Bank & Trust Company, a corporation, was administrator with the will annexed, of the estate of D. St. Clair Nesbit, deceased. That no demand was made or action taken against the estate or against Brevard County Bank & Trust Company as administrator of such estate, and that on to-wit: October 15, 1929, P. Tomasella, Jr., was named liquidator of Brevard County Bank & Trust Company by the Comptroller, Brevard County Bank & Trust Company having prior to that time closed its doors, having been declared insolvent, and that subsequent to that date and up to a time within one year prior to the filing of this suit P. Tomasello, Jr., was receiver of Cocoa Bank & Trust Company, a corporation, and was also liquidator of Brevard County Bank & Trust Company, which corporation was administrator with will annexed of the estate of D. St. Clair Nesbit, deceased; that during all of said period of time after the appointment of P. Tomasello, Jr., as liquidator of said Brevard County Bank & Trust Company up to within one year prior to the filing of this suit there were not two respective parties, one who could sue for said stock assessment claim and another who could be sued therefor.

The record shows that Barnett National Bank of Jacksonville, a corporation, was the successor of Brevard County Bank & Trust Company, and P. Tomasello, Jr., as liquidator thereof, as administrator with will annexed *de bonis non* of the estate of D. St. Clair Nisbet, deceased.

In Wade, *et al.*, v. Doyle, 17 Fla. 522, this Court quoted with approval from DeKay v. Darrah, 2 Green, N. J. 288. In the latter case it was held:

"The course of decisions, both in England and in this country, has established the rule beyond doubt, that when the statute has commenced running, it runs over *all* subsequent disabilities and intermediate acts and events. Stowel v. Lord Zouch, 1 Plowd. 375; Doe v. Shane, 4 T. R. 306, in note; Hickman v. Walker, Willes Rep. 27, and cases there cited. Smith v. Hill, 1 Wilson's Rep. 134; Walden v. Gratz, 1 Wheat. Rep. 292; Hall v. Wybourn, 2 Salk. 420; Jackson v. Robins, 15 Johns. Rep. 171.

"In Peck v. Randall, 1 Johns. Rep. 176, Chief Justice KENT says, he knows of nothing that will suspend the course of the statute, after it has begun to run; and the same learned jurist, afterwards, as chancellor, in the cases of Demarest v. Wynkoop 3 Johns, Ch. 129, and Moores v. White, 6 Johns, Ch. 360, reviews the authorities and establishes the rule in equity, as well as at law.

"In short, if courts of justice are shut up in consequence of war, rebellion, revolution or usurpation of government, it constitutes no bar to the statute of limitations. 4 Bac. Abr. 480, tit. State. Limitations, pl. 6; 2 Salk. 420.

"Hence it was that the statute of 1 Wm. & Mary, was passed; by which it was enacted, that the period between the departure of King James and the assumption of the government by King William, should not be accounted as part of the time mentioned in the statute of limitations.

"There is no distinction between a disability or impediment on the part of the plaintiff, and when it arises from some change or event that has happened to the debtor. 15 Johns. Rep. Rep. 171. Nor is there any difference between a voluntary and involuntary disability. Doe v. Jones, 4 T. R. 301."

In Gillespie v. Fla. Mortgage and Investment Company, 96 Fla. 35, 117 Sou. 708, we said:

"In the absence of a saving clause a statute of limitations runs against all persons whether under disability or not, 37 C. J. 985. When a statute of limitations begins to run, no subsequent disability will prevent it from running. See Barnett v. Herring, 1 Fla. 387; Wade v. Doyle, 17 Fla. 522; Doyle v. Wade, 23 Fla. 90, 1 So. R. 516. Where a cause of action arises during the life of an ancestor, resting under a disability, such disability ceases and the statute begins to run upon the death of such ancestor; and the statute is not suspended by any statutory disability of the heir at the time of the descent cast. 37 C. J. 1031; Davis v. Coblens, 174 U. S. 719, 19 Sup. Ct. R. 832; Doyle v. Wade, 23 Fla. 90, 1 So. R. 516, 11 Am. St. R. 334.'

"These questions being resolved contrary to the contention of the plaintiff in error, it becomes unnecessary to discuss other questions presented.

We have examined the record and find no reversible error. Therefore, the judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.